HEISKELL *v.* CHICKASAW LODGE.

(*Jackson.* . May 11, 1889.)

1. CHARITY DEFINITE.

A devise to Chickasaw Lodge of Odd Fellows, "for the benefit of the widows and orphans," is for the widows and orphans of deceased members of that lodge, and is sufficiently definite to be sustained as a charity.

Cases cited and approved: Dickson *v.* Montgomery, 1 Swan, 366; Green *v.* Allen, 5 Hum., 204; Franklin *v.* Armfield, 2 Sneed, 347; Vidal *v.* Girard, 2 How., 192; Frierson *v.* General Assembly, 7 Heis., 694; State *v.* Smith, 16 Lea, 664; Gass *v.* Ross, 3 Sneed, 213.

2. INCORPORATION.  *Delegated power.*

Chapter 69, Acts 1846, and Chapter 60, Acts 1847, authorizing the Grand Lodge I. O. O. F. to establish subordinate lodges, and providing that such lodges may hold title to property, did not delegate power to create corporations, and such lodges did not become corporations.

Cases cited and approved: State *v.* Armstrong, 3 Sneed, 634; Mayor *v.* Shelton, 1 Head, 24.

3. CHARITY.   *Capacity to be trustee for.*

Such subordinate lodge, organized under a charter from the Grand Lodge, having a continuous personality and officers representing it, and being clothed by the Legislature with power to hold property, is such a legal person as is capable of holding and administering a trust germane to the purposes of the order.

4. CHARITABLE TRUST.   *Right to question capacity of trustee.*

Where the charity is definite, heirs and devisees cannot question the legal capacity of the trustee to hold and administer the trust, but the State only can do so.

Heiskell *v.* Chickasaw Lodge.

Case cited and approved: Vidal *v.* Girard's Ex'rs, 2 How., 127.

Cited and distinguished: *In re* McGraw's Estate, 19 N. E. Reporter, 233.

FROM SHELBY.

Appeal from Chancery Court of Shelby County. B. M. ESTES, Ch.

HEISKELL & HEISKELL for Heiskell.

L. W. FINLAY for Chickasaw Lodge.

DICKINSON, Sp. J. This bill was filed by the executor of the will of Mrs. Addie B. Howell against Chickasaw Lodge, No. 8, Independent Order Odd Fellows, a devisee, and Eva Happoldt and others, who are residuary legatees under said will. The eleventh clause of the will is as follows: "I give the proceeds of my $2,000 Union and Planters' Insurance Company stock to Chickasaw Lodge, No. 8, I. O. O. F., the dividends from said stock to be used by said lodge for the benefit of the widows and orphans."

It is conceded that this meant Planters' Insurance stock, the decedent owning at her death that amount of stock in said company.

It is insisted that this devise is void, on the grounds that the defendant lodge was not incorporated; that it could not, even if incorporated,

hold any property except for strictly lodge purposes, such as providing for a hall and regalia, etc.; that it could not hold more than $10,000 of property, conceding its lawful incorporation, and it already holds in excess of this sum; that the objects of the bounty, "widows and orphans," is too indefinite to be sustained, and that the residuary legatees are entitled to the stock. An additional question is raised by the lodge, insisting that only the State can question its powers, and that neither distributees nor residuary legatees can challenge its right to take the bequest, or set up any interest in it.

It is proven that the lodge holds property in excess of $10,000 in value.

Trusts for charitable uses are favored by courts of equity in this State. *Dickson* v. *Montgomery*, 1 Swan, 366.

The general principles governing charities are well settled by our Courts, but their application must be made to the varying facts of each case; and therein lies the difficulty.

In *Green* v. *Allen*, 5 Hum., 204, the first case in which the question of charities came before our Court, the rule was thus stated:

"If the charity be created, either by devise or deed, it must be in favor of a person having sufficient capacity to take as devisee or donee; or, if it be to not such person, it must be definite in its object and lawful in its creation, and to be executed and regulated by trustees, before the

Court of Chancery can, by virtue of its extraordinary jurisdiction, interfere in its execution."

In that case the bequest was to the · "Tennessee Annual Conference of the Methodist Episcopal Church, for the benefit of institutions of learning under the superintendence of said Conference, and to the Missionary Society of the Methodist Episcopal Church, and to be otherwise disposed of as the Tennessee Annual Conference may deem best in their wisdom."

The Court held that this was "a general, indefinite purpose of charity," and that the Conference was not incorporated, and could not, therefore, "be looked upon as having any legal existence whatever," and that the proposed charity was not supported by trustees.

The principle established by this case is that where the purpose is too general and indefinite for a Chancellor to undertake in his discretion to carry it into effect, and there is no trustee capable of taking, who is charged with the application of the charity, it must fail. Both of these infirmities concurred in that case. If the charity had been clearly defined and the beneficiaries specifically designated, a new question, not involved in that decision—that of sustaining the charity by the appointment of trustees—would have arisen.

In the next case—that of *Dickson* v. *Montgomery*, 1 Swan, 348—the devise was to the Treasurer of an incorporated college, to be appropriated to home and foreign missions, and the education of indigent

young men for the ministry, under the direction
of the "Associate Reformed Synod of the South,"
an incorporated body.

Here the charity was too vague and uncertain
for a Court of Chancery to have undertaken to
clothe trustees with the power and discretion for
its administration, but there was a legal person
made trustee, who was capable of taking the trust,
and the discretion as to the application of the be-
quest was lodged with such trustee, and the charity
was sustained.

Thus, a charity which would have failed for in-
definiteness, was saved because there was a trustee
named capable of taking the trust. The converse
of this proposition, viz., a definite object, but in-
capacity in person designated to take the trust,
was not passed upon.

Judge Green, however, thus quotes, with appro-
bation, from Story's Equity Jurisprudence, Section
1191: "Where a charity is definite in its objects,
and lawful in its creation, and it is to be executed
and regulated by trustees, whether they are private
individuals or corporations, there the administration
properly belongs to such trustees, and the King,
as *pater patriæ*, has no general authority to regu-
late or control the administration of the funds.
In all such cases, however, if there be any abuse
or misuse of the funds by such trustees, the Court
of Chancery will interpose, at the instance of the
Attorney-General, or the parties in interest, to cor-
rect such abuse or misuse of the funds. But in

such cases the interposition of the Court is properly referable to its general jurisdiction as a Court of equity, to prevent abuses of trust, and not to any original right to direct the management of a charity or the conduct of the trustees. Indeed, if the trustees of the charity should grossly abuse their trust, a Court of equity may go the length of taking it away from them and commit the administration of the charity to other hands. But this is no more than the Court will do, in proper cases, for any gross abuse of other trusts."

It will be observed that this is predicated upon the fact that such charity is definite in its objects, and when this is the case the Court protects it from abuse. Protecting a charity from abuse, even to the extent of committing it to other trustees of its own appointment, requires the exercise, it would seem, of just as much discretion on the part of the Court in respect to the administration of the charity as would the original appointment of such trustees in the event that the trustee named in the will were legally incapable of taking the trust. If the charity were definite enough to be protected from abuse by the appointment of new trustees, it would appear to be sufficiently definite to be saved from failure by the appointment of a trustee in the first instance.

In the one instance the Court of Chancery acts upon the familiar doctrine that trusts are objects of its protection, while in the second instance the equally well-established equity principle, that a trust

otherwise valid shall not be permitted to fail for want of trustees, is invoked.

In *Franklin* v. *Armfield*, 2 Sneed, 347, Judge Marshall says: "Upon the jurisdiction of the Courts of Chancery in this State the cases of *Green* v. *Allen*, 5 Hum.; · *Oakley* v. *Long*, 10 Id., 254; and *Dickson* v. *Montgomery*, 1 Swan, 361, have affirmatively settled that such jurisdiction exists in the Chancery Court in this State, in cases where the charity is· created in favor of a "person having sufficient capacity to take as devisee· or donee, or if it be not to such person, where it is definite in its object, lawful in its creation, and to be executed by trustees."

On page 348 it .is manifest that Judge Marshall understands the words "person having sufficient capacity to take as devisee or donee," used by Judge Turley, as referring to the trustee and not to the beneficiaries under the charity, for he says, "By the will the testator appoints his brothers, James Franklin and William Franklin, trustees for the charity, and prescribes their duties. It is scarcely necessary to say that these persons are capable of taking as devisees in the language of Judge Turley." This construction of Judge Turley's language admits of no doubt, for he could not have referred to the beneficiaries, for if they were the devisees or donees referred to as capable of taking, then it would be no charity at all, but they would have a personal interest in and ownership of the fund. That in such case "devisee and

donee" mean the trustee is evident from the construction put on the same words in *Vidal* v. *Girard*, 2 H., 192.

The rule, as stated by Judge Turley, provides for two classes of cases: where the trustee named has capacity to take; and second, where, though the trustees have not such capacity, nevertheless the object is definite and lawful, and is to be carried out by trustees. Under the first member of the rule the charity may be upheld by reason of a trustee capable of taking being interposed, though without such trustee it might fail because too indefinite for a Court of Chancery to undertake to apply it. Under the second member of the rule, the trust being definite and to be executed by trustees, a Court of Chancery can, for the reason that it is definite, and is to be executed by trustees who are always amenable to its authority, uphold it, and to this end it may remove the trustee.

In *Frierson* v. *General Assembly*, 7 Heisk., 694, it is stated that "the principles settled by our decisions are that where the charity is definite in its objects, is lawful, and is to be executed and regulated by trustees, who are appointed for the purpose, it will be upheld." The Court (page 693) further says, "It may be considered now as settled in this State, and we believe in most of the States of the Union that the jurisdiction rests, mainly if not entirely, upon the ordinary powers of our Courts of Chancery as to the administration and enforcement of trusts."

Where there is no trustee clothed with discretion in the distribution of the charity, who is capable of taking, and the objects are indefinite, the charity must fail, but where it is definite, and is to be administered by trustees, then there is no reason in law or public policy why it should fail.

Perry, in his work on Trusts, Section 722, says: "If a donor makes a gift in trust for a particular charitable purpose, as to establish a particular school, hospital, asylum, or other charitable institutions, and appoints no trustee; or the trustee appointed by him is incapable of taking the gift, and of acting in that behalf; or if the trustee dies before the testator, or declines to act; or if trustees are named or appointed who are not in *esse*, but are to come into existence thereafter, as by an act of incorporation, courts of equity, in the exercise of their ordinary jurisdiction, can establish the charity; for it is their invariable practice not to allow a legal and valid trust to fail for want of a trustee. Therefore Courts will appoint trustees in such cases to take up and carry out the clear purposes of the donor, or they will order the heir or legal representative to hold the fund upon the declared trust until trustees can be appointed to execute the trust as contemplated. In exercising this jurisdiction Courts are called upon to exercise no extraordinary prerogative powers."

In *State* v. *Smith*, 16 Lea, 664, where the devise was to trustees to establish "a college of learning," the trust was not only sustained, but the

Court undertook to supervise the location and plans of building and the scheme for the conduct of the college.

The following principles are settled in Tennessee:

*First*—That trusts for charitable uses should be favored by courts of equity.

*Second*—That where the object of the charity is definite, and it is to be administered by trustees, it will be sustained. .

*Third*—That although the objects may be too indefinite for a court of chancery to undertake to administer it, yet if a trustee capable of taking the trust be named and clothed with the necessary powers and discretion for carrying out the charity, it will be upheld.

It has, however, never been adjudicated in this State that a court of equity, in order to sustain a charity, though it be sufficiently definite, will appoint a trustee in cases where none are named in the instrument creating the charity, or where the trustee named is incapable of taking; and, as will further appear, this question does not arise in this case.

Let us now apply the principles stated to the present case.

It is said that the desigination of the beneficiaries is too indefinite, and that therefore the devise must fail.

The language of the will is: " The dividends from said stock to be used by said lodge for the benefit of the widows and orphans."

It is in proof that there were certain widows and orphans of former members of this lodge in being at the time the will went into effect, and their names are set out in the record. We do not consider this material, as it was clearly not the intention of the testatrix to give any particular persons a special interest in the fund. The fund was not to be divided, but the principal was to be kept intact as a trust fund, and the interest was to be used from time to time for the benefit of the widows and orphans of that lodge, the class to continue though individuals might die and new ones come in. It is said that no special widows and orphans are meant, and that it means widows and orphans generally. The will says "the" widows and orphans, and uses the expression in connection with that lodge. It is a matter of general knowledge that one of the objects of this order is to take care of the widows and orphans of its deceased members. It is in proof that this fact was known to the testatrix. The constitution of the order is in evidence, and shows that the care of widows and orphans is one of its special functions.

The purpose of a bequest to an order of this kind, for the widows and orphans, admits of no doubt as to the beneficiaries intended. That it is a fluctuating class can make no difference.

As said by Judge Green in *Dickson* v. *Montgomery*, 1 Swan, 369, and approved in *Frierson* v. *General Assembly*, 7 Heis., 706, "it is of the very

nature of a charity that the individual beneficiaries are unknown."

Judge Marshall, in *Franklin* v. *Armfield*, 2 Sneed, 350, says: "It certainly has been said that 'uncertainty of individual object is a characteristic of charity,' and it has been said that this 'uncertainty is indispensable to all charities,' and 'if any one has a right to claim by law, it ceases to be a charity.'"

In *Vidal* v. *Girard* the devise was for the education of poor children in the native city of the testator.

In *Gass* v. *Ross*, 3 Sneed, 213, a bequest of a fund to be invested in stocks, the dividends to be applied to the education of the children in a designated school district in the county forever, was held to be sufficiently definite.

Perry, in his work on Trusts, Section 710, says: "In order that there may be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number; that is, the persons to be benefited must be vague, uncertain, and indefinite until they are selected or appointed to be the particular beneficiaries of the trust for the time being."

In *State* v. *Smith*, 16 Lea, 664, the devise was "to the trustees of the free schools of Shelby County, Tennessee, and their successors in office forever, for the purpose of erecting a college of learning," and to the Chairman of the County Court of Shelby County, Tennessee, "to be applied

for the education of the poor and orphan white children in the first district of said county." Both of these charities were sustained.

We hold that the beneficiaries under Mrs. Howell's will are definitely indicated, and that the terms of the bequest, viz., "the widows and orphans," in the connection used mean those of Chickasaw Lodge, and that they embrace a certain and continuing class always capable of identification.

It is next insisted that the devise must fail because the Chickasaw Lodge is not incorporated, and that no trustee capable of taking the property is named. It is settled in this State that a voluntary unincorporated association cannot take such a devise, except it be for church purposes. *Reeves* v. *Reeves,* 5 Lea, 646.

By an Act passed in 1846 (Chapter 69) "the Grand Lodge of the Independent Order of Odd Fellows of the State of Tennessee" was incorporated with power "to acquire, hold, possess, use, occupy, and enjoy real and personal estate to the amount of $20,000, and to sell and convey or otherwise dispose of the same under by-laws, rules, and regulations of said lodge, and to be competent to contract and be contracted with, to sue and be sued, plead and be impleaded," etc.

By Chapter 60, Acts 1847, the former Act was amended so "that whenever said Grand Lodge shall establish or charter a subordinate lodge, the said subordinate lodge is hereby invested with the separate right to an amount of real and personal

property not exceeding the sum of $10,000, to the same extent and under the guards and restrictions of the aforesaid Act of 19th of January, 1846."

The third section of the amendatory act provides that: "Whenever the authority establishing said subordinate lodge shall be withdrawn and the separate existence of said subordinate lodge be destroyed, the property of said lodge shall be placed in the hands of a trustee appointed by the grand lodge to pay the debts and liabilities of said subordinate lodge, and the residue of the real estate, if there be any, to be applied by the trustee as may be prescribed by the by-laws of said subordinate lodge; *provided,* the benefit of this act shall extend to lodges already established as well as to those to be created."

It is insisted that the defendant lodge could not, by virtue of these acts, become a corporation, because the Legislature cannot delegate the power to create corporations, and that this is the effect of the foregoing acts, if it be insisted that their purpose was to make subordinate lodges legal persons.

In *State* v. *Armstrong*, 3 Sneed, 634—where the Act of 1856, Chapter 254, which conferred upon the Courts the power to create corporations and invest them with such rights as were not incompatible with the Constitution and laws, was in question—Judge McKinney held that the power to create corporations was, by the Constitution, vested exclusively in the Legislature, and that it could not be delegated.

In *Mayor, etc.,* v. *Shelton,* 1 Head, 24, the Act of 1849, Chapter 17, which authorized County Courts, upon certain conditions, to create town corporations, was sustained. The distinction between this act and the one declared void in *State* v. *Armstrong* is clearly stated. Under the former, legislative discretion to confer powers was attempted to be delegated to the Courts, while under the latter act, all the powers, privileges, and immunities were fixed by the Legislature, and nothing was left to the County Court but to record the petition and prescribe the limits of the town.

The acts chartering the Grand Lodge of the State do not delegate to it the authority to confer any powers upon subordinate lodges. The legislative discretion in this respect is not parted with, but the power with which such lodges is to be clothed is distinctly defined in the act. There can be no distinction drawn between these acts in this respect, and the one sustained in *Mayor* v. *Shelton,* except that, under the former, the association of individuals, upon whom the power under the legislative enactment devolved, was organized by the grand lodge, while under the latter it was effected by the recording act of the County Court. In neither case was any power, right, liability, or immunity imparted, beyond what the legislative will had expressly passed upon and sanctioned in advance.

We know of no principle which makes such investiture of power in the Grand Lodge, as is given

by these acts void, or against public policy. When these acts were passed there was no general law by which the right to hold property might be acquired by an association, and it would have been highly inconvenient to the Order and harrassing to the Legislature if a separate act had been necessary every time a subordinate lodge was created.

The purposes were benevolent, and not for private gain. The life and harmony of the Order depended upon judicious care in constituting subordinate lodges, and there was, in the nature of things, no probability of any abuse from the provision for clothing with the limited rights designated such branches as might be established.

The maintenance of the constitutionality of these laws, and the validity of the acts done under them, does not establish that the defendant lodge is a corporation. No certain form is necessary to a grant of corporate franchises, nor is the use of the words "incorporate" indispensable. The real character and attributes must be looked at to determine whether there was a purpose to create a corporation. Morawitz, Section 18.

There is nothing in these acts indicating any such intent. · The only power conferred is the right to hold a certain amount of property.

No right is given to sue or be sued, to contract, or have a corporate seal. No provision is made by law for the control of its affairs. The characteristics and attributes ordinarily belonging to corporations are all wanting. Charters of incor-

poration are usually for a fixed period, or deter-
minable at the legislative will. The defendant
holds its life at the will of the Grand Lodge.

The intention of the Legislature to confer cor-
porate franchises is essential to an act of incorpora-
tion, and no presumption should be allowed in
favor of the grant. Morawitz, Section 19.

The theory that subordinate lodges are indepen-
dent corporations is wholly inconsistent with the
system of government of such Orders. The reserved
power to destroy them negatives the idea that the
Grand Lodge sought to have them made legal en-
tities with a vital system of their own.

It is evident that the purpose of those Acts was
not to create corporations out of subordinate lodges,
but simply to clothe them with the one power of
holding property which was necessary for the es-
tablishment and operation of local branches of the
Order. If the purpose of the Acts was to create
corporations, then their constitutionality would be
involved upon the point of lodging with an Order
over which the State has no control powers such
as are ordinarily conferred only on Courts and
public officers. As we have construed them this
question does not arise.

While the devisee named is not a corporation,
yet it is clothed by the State with the power to
hold property. It exercises such power under leg-
islative sanction, and its right to do so cannot be
questioned, except upon *quo warranto* proceedings
at the instance of the Attorney-General. While it

is not a corporation, yet it is a society organized under a charter from the Grand Lodge, having a continuous personality, notwithstanding changes of individual membership, and being represented by officers authorized to act for and bind the association. It is different from a merely voluntary association, which may at any time disappear from existence by the inaction of individual members. It is a *quasi* private corporation, and to this extent it is recognized as a legal person by the Legislature, which has clothed it in its corporate capacity with powers which only a legal person can exercise. It is impleaded in this case as a legal person. The Courts can reach it as an entity, and can control it in the administration of this trust.

We hold, therefore, that the lodge has sufficient capacity to take this fund, and that it is a proper trustee to administer it for the purposes specified, because those purposes are germane to the objects of its existence.

But it is said that the lodge, even if incorporated, cannot, under its constating instrument, hold more than ten thousand dollars' worth of property, and that it already holds more than that amount.

In the construction we have given to the devise it is not to the lodge for its own use, but in trust, and therefore the limitation does not necessarily apply in this case. But if it did, we do not think that this question can be raised by the parties litigant.

There is a distinction between the case where a corporation has received and is holding property in excess of the limitation of its charter and the case where its rights have not vested and it is not in possession. In the first case no one but the State can raise the question or enforce a forfeiture. *Barrow* v. *Turnpike Company,* 9 Hum., 307.

In the second case, if there be a devise direct to the corporation for its own use and benefit, then the heirs or residuary legatees may raise the question, because the gift would be void, the same as if made to any impossible person, and the property would go the same as if the bequest had not been made. Those in whom the right to it would have vested, if it had not been disposed of at all, have a perfect right to assert their claims against such corporation. *In re* McGraw's Estate, 19 N. E. Reporter, 233.

In that case the bequest was a gift to Cornell University for its own use, and not in trust for any charity, and the donee, already possessing more than its charter permitted, the devise was held void, and the right of the heirs and next of kin to contest the validity of the gift on this ground, and claim the property, was sustained in a very able opinion by Judge Peckham. That case, though cited as conclusive as to the one under consideration, itself sets forth, in clear terms, the distinction between the two. As stated, the McGraw devise was a gift direct to a corporation which

could not take. This is a bequest for a definite charity, made to a devisee entrusted with its administration. The devise is not void, because it is for a definite charity. It is valid, and the heirs and next of kin have no interest in it, and cannot question the capacity of the trustee named.

Judge Peckham, on page 252, says:

"In the case of *Vidal* v. *Girard's Ex'rs*, 2 How., 127, the trusts created by the will of Stephen Girard were held valid, and the Court said that in such a case, if the corporation were incompetent to execute them, the heirs could not take advantage of such a fact, as that could only be done by the State by *quo warranto* or other judicial proceeding. This is upon the ground that the trust was a valid trust; and if so, and the corporation, as such, had no power to execute it, the trust did not, for that reason, fail; but upon the failure of the corporation for lack of power to execute it, a court of equity would appoint a new trustee. Of course the heirs had no interest in the question when once the trust was declared valid, whether the corporation was exceeding its powers in taking upon itself the execution of the trust or not. They had no title to or any further interest in the property."

In the construction we have put upon this bequest the parties who are making the contest in this case have no interest in or right to the property, and they cannot question the right of the

trustee named to hold, the trust fund any more than any stranger to the will.

This bequest being for a definite charity, to be carried out by a trustee capable of taking the property, is valid. The decree of the Chancellor is affirmed.