## Richmond.

### CLARK AND OTHERS v. OLIVER AND OTHERS.

| 91 | 421 |
| 106 | 5 |

APRIL 25, 1895.

1. CHANCERY JURISDICTION—*Charities—Contributors—Resulting Trust.*—Where contributors have subscribed to a fund for a charitable purpose and have paid it over to the hand by which it is to be received and applied, their interest and control over it cease and determine, and whatever jurisdiction is thereafter entertained by the courts with respect to the disposition and control of this fund, must be called into active exercise either by the attorney-general, acting on behalf of the public, or by the trustee charged with its custody and administration, or by some person having a beneficial interest in the object of the trust. There is no such thing as a resulting trust with respect to a charity.

2. CHANCERY. JURISDICTION—*Legal Demand—Trust Property—Lien.*—A court of equity will not, in the absence of statutory authority, entertain jurisdiction to enforce a purely legal demand. The mere fact that the legal title to the property sought to be subjected is in trustees, in no manner affects the rights and remedies of those seeking to charge it. The right to charge the property specifically must be first acquired.

Appeal from a decree of the Circuit Court of Henrico county, pronounced July 30, 1891, in a suit in chancery wherein the appellants were the complainants, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*W. W. Henry* and *J. Samuel Parish*, for the appellants.

*Stiles & Holladay* and *Edmund Waddill, Jr.*, for the appellees.

KEITH, P., delivered the opinion of the court.

In the spring of 1875, certain colored people purchased of Charles T. Davis a lot of ground in the city of Richmond, on the north line of Moore street, with brick buildings thereon, and on the 22d of August, 1876, this property was conveyed to John Oliver, Coleman C. Smith and others, who had been in the meantime appointed trustees of the Moore Street Missionary Baptist Church, by an order of the Circuit Court of Richmond city, entered on the 24th of November, 1875, to hold the property, subject to the payment of the unpaid purchase money, for the benefit of the Moore Street Missionary Baptist Church, according to the laws of the State of Virginia governing the holding of church property. The unpaid purchase money amounted to the sum of $4,523.52, which was evidenced by five negotiable notes secured by a deed of trust. About the same time, it appears that a movement was set on foot by certain colored people in the city of Richmond to raise a fund for the establishment of an industrial school, to be known as the Moore Street Industrial Society, the design of which was to promote the instruction of colored youth in practical and useful trades, and to that end to raise money for the purchase of suitable buildings and equipment.

In order to secure the money for this industrial school many of the influential residents of Richmond were induced to subscribe to a fund for that purpose; by others letters were written and testimonials given, which were placed in the hands of agents, who went to Pennsylvania and elsewhere soliciting assistance for this most worthy purpose from the charitably disposed. One John Oliver appears to have been the chief agent through whom these appeals were made. He was ac-

tive and successful in securing subscriptions, and in the month of March, 1882, the deed given to secure the unpaid purchase money, resting upon the Moore Street Missionary Baptist Church property, was released, the sum secured thereby having been paid off and discharged.

In the meantime a controversy had arisen as to the title of this property. The Moore Street Missionary Baptist Church had negotiated the purchase of the lot upon which the church and other buildings stand, and had taken the deed from Davis, their vendor, to trustees for its benefit, and had by strenuous efforts assisted in some degree in relieving it of the lien for the balance of the unpaid purchase money. Be this as it may, however, certain it is that the Moore Street Missionary Baptist Church was in possession, with the absolute legal title, subject only to the deed of trust before mentioned in favor of Davis for the unpaid purchase money, and when that incumbrance was discharged the apparent title of the Moore Street Missionary Baptist Church, through its trustees, was perfect and complete.

Those, however, who had been instrumental in promoting the organization of the industrial school determined to assert a claim to this property by reason of the fact, which is beyond dispute, that by far the greater part, if not the whole of the purchase money, had been paid out of the money raised by contributions voluntarily made by persons whose aid had been solicited for the erection and endowment of an industrial school, and not for the establishment of a Baptist church. This controversy between these two organizations—the Moore Street Missionary Baptist Church and those representing the Industrial School—resulted in a compromise, and in April, 1880, a deed was executed by the trustees of the church and of the Moore Street Industrial School, by which the greater part of this property was conveyed for the benefit of the school; and with a covenant that if that portion of it which

remained for the benefit of the church, should at any time cease to be used for religious purposes and for worship by the said Moore Street Missionary Baptist Church, it should belong to and be used by the Moore Street Industrial School. This arrangement, which it was hoped would compose the difficulties between the church and the school, did not have that effect, and six years after its execution a bill was filed on behalf of a number of plaintiffs, suing for themselves and others, contributors to the fund for the establishment of an industrial school, setting out the terms and conditions upon which they had subscribed, declaring that it was for the establishment of a school to enable colored youth in the southern portion of the United States to acquire useful and practical trades, and to become skilled laborers, and generally to elevate their condition. They averred that they were not solicited for subscriptions for any other purpose, and that they did not subscribe or contribute any money to any person for the establishment of the Moore Street Missionary Baptist Church, or any church whatever; that they "paid their money to John Oliver, as agent, to establish the said school, and not to build, or to aid, or to establish a church." They then set out substantially the facts that have been narrated, and claim that there has been a diversion of the fund from the uses and purposes for which it was designed, and that this application of the money given by them for the Industrial School for the purchase of property for the Moore Street Missionary Baptist Church, without their knowledge and consent, was a gross perversion and misapplication of their money, unwarranted by law, and was inequitable and unjust.

To this bill there was a demurrer, and the first question presented for our decision is: Does the bill state a case entitling the plaintiffs to the relief prayed for? The contributors to this fund parted with their interest in it, and when it was paid their control over it ceased. They are not described as

persons belonging to the class intended to be benefited by the application of the fund. The money was devoted to a charitable use. As we have said, the whole interest of the donors was divested. There remained in them no scintilla of right. How then can they be heard in a court of equity with respect to the disposition of it? There is no such thing as a resulting trust with respect to a charity. Where a fund has been devoted to a charity, which, if the charity fails, will go to others, those persons having hostile interests may, of course, assert any claim they may have in the subject, and show that the charitable use has for any cause failed and become inoperative and void; but where the donor has effectually passed out of himself all interest in the fund devoted to a charity, neither he, nor those claiming under him, have any standing in a court of equity as to its disposition and control. The law is so laid down in the case of *Ludlam and others* v. *Higbee and others*, 3 Stockton, 342, where it is said that "the contributors to a fund creating a trust for mere charitable purposes, cannot call the trustees of that fund to an account for a misapplication of the funds, or any other breach of the trust. There must be something peculiar in the transaction, beyond the mere fact of contribution, to give a contributor to a charitable fund a foothold in court to enable him to question the disposition of the fund."

It is said that a person who goes into a court of equity for such a purpose must have some interest in the trust. He must be a trustee, or *cestui que trust*, or have some reversionary interest in the trust fund. In the case just cited the subscriptions were to a fund for the purpose of building a church at Cape May, for the benefit of visitors of all denominations of christians, and the demurrer in that case was overruled because the plaintiffs showed themselves to be of the class which constituted the objects of the trust, and therefore had a right to seek redress at the hands of the court. To the

same effect, see Perry on Trusts, section 733, where it is declared that "the contributors to the fund cannot maintain a bill to correct an abuse of the fund by the trustees, unless they are also the *cestui que trust*." In a suit to enforce a trust, if it appears that the plaintiffs have no direct interest in the enforcement of the trust, their bill will be dismissed. See 21 Barbour, 565; Perry on Trusts, section 873; and Story Equity Jurisp., section 1191.

The case of *Chambers* v. *Baptist Educational Society*, 1 B. Monroe, page 215, is much relied upon both by the plaintiffs and defendants in support of their respective positions. In that case, one Pawling, by his will, bequeathed a sum for the benefit of the Baptist Educational Society. Chambers subscribed a small amount to the same charity, and a part of the Pawling fund was loaned to him by the trustees. For both of these sums judgments at law were recovered against him, and he filed his bill in chancery against the trustees and others, enjoining the collection of these judgments, in which he charged various acts of malfeasance and abuse of their corporate powers, but mainly in the misapplication of the fund to other objects and purposes than those designated by the founder and donor. He contended that he was a party to the contract of subscription to the fund; that he had been induced to enter into it by false representations, or a suppression of the truth, in matters material to its correct understanding, and he therefore asked for a dissolution of the contract and a perpetuation of the injunction against the payment of the money subscribed.

Surely that case is not in any degree analogous to the case at bar. If one of the plaintiffs here were being sued by the Missionary Baptist Church to compel the payment of a judgment obtained at law upon his contract of subscription, the allegations contained in the bill in this case would clearly entitle him to the same relief as was given Chambers in the

suit brought by him against the Baptist Educational Society. It would be a fraud upon Clark and others to allow the Moore Street Missionary Baptist Church to recover of them money which had been subscribed to a wholly different donee, for wholly different purposes. It is true that the Supreme Court of Kentucky, in the course of its opinion, indulges in observations unnecessary to the decision, which tend to maintain the position of the plaintiffs here. The intimation is that a party to a contract of donation, or the representative of such party, may maintain such a bill, for it says that "no private individual can proceed against an eleemosynary corporation, unless he be a party to the contract of donation, or a representative of one who is, or is interested in the same, or in the use to which the fund is donated." As far as this opinion recognizes the right of a party merely by virtue of his having been a subscriber to the fund, to maintain a bill to control its disposition, we cannot concur in it, though we think the decree in that case was eminently proper.

An information or bill may be exhibited by the Attorney-General, as was done in the case of *Gallego's Ex'ors* v. *Attorney General*, 3 Leigh, 487, or a bill may be filed by the trustees, or one of them, asking the aid of a court of equity, or by any beneficiary of the trust, calling upon a court to compel its due execution; but the question here is, not as to the inherent powers of a court of equity to compel a due execution of a trust, charitable or otherwise. Its power to that end is ample. The true question is, by whom the exercise of those powers may be invoked. In our opinion, where contributors have subscribed to a fund for a charitable purpose, and have paid it over to the hand by which it is to be received and applied; their interest in and control over it cease and determine, and whatever jurisdiction is thereafter entertained by the courts with respect to the disposition and control of this fund, must be called into active exercise either

by the Attorney General, acting upon behalf of the public, or by the trustees charged with its custody and administration, or by some ·person having a beneficial interest in the object of the trust.

We are, therefore, of opinion, that the ·demurrer of the trustees of the Moore Street Missionary Baptist Church should have been sustained and the bill dismissed, and that the decree appealed from should be affirmed.

Along with the record in this suit, is presented the proceedings upon a bill filed by John W. Williams, into which came Henry Exall by petition, the object of the bill being to recover the sum of $1,587.20, alleged to be due John W. Williams, plaintiff, for certain repairs placed upon the church, and the sum of $100, with interest from October 31, 1878, and costs, due Henry Exall upon a judgment recovered by Exall and by him assigned to John Oliver for the benefit of the Moore Street Industrial School.   To the bill the trustees of the Moore Street Missionary Baptist Church were made parties defendant, and the prayer is for an account of the debt due to Williams, and of the real and personal estate owned by the church, and for further and general relief.

It is not pretended that there was any lien of any kind for the claim of Williams.   The bill seems to proceed upon the idea that, because the work was done upon property standing in the name of trustees, a court of equity, under its general power to administer a trust, should compel its payment.   This proposition cannot be maintained.   The plaintiff here is seeking to enforce a purely legal demand for work and labor done and materials furnished in the repair of a church.   That the property is church property, and that the legal title to it is in trustees, in no manner affects the rights and remedies of those seeking to charge it.   In the absence of a statute it cannot be subjected in equity any more than at law, until a

lien has been acquired; that is to say, a right to charge the property specifically with the demand of the plaintiff.

The case of *Linn* v. *Carson*, 32 Gratt. 170, is relied upon by the appellants to sustain their contention. That case rests upon its own peculiar facts and circumstances, and we do not consider that it is authority by which we should be controlled in passing upon the controversy now before us.

We are of opinion, therefore, that the decree of the Circuit Court dismissing the bill brought by Williams, who, as we have seen, had no lien of any kind against the property which he sought to charge, but who came into a court of equity to enforce a simple contract, was clearly right, and that it also must be affirmed.

AFFIRMED.