Argued March 13; affirmed December 30, 1930

WEMME ET AL. *v.* NOYES ET AL.

(294 P. 602)

*Thomas Mannix* of Portland for appellants.

*John Veatch* of Portland (Joseph, Haney & Veatch of Portland on the brief) for respondents.

COSHOW, C. J. This case is another attempt on the part of plaintiffs to control or destroy the bequest and devise of the late Henry Wemme in favor of the home for wayward girls he desired to establish in

the city of Portland. Whatever may be the purpose of the instant suit it operates to delay administration of the charity already unreasonably delayed by numerous litigations. It has been before this court three times before: *Wemme v. First Church of Christ,* 110 Or. 179 (219 P. 618, 223 P. 250); 111 Or. 386 (227 P. 277); 115 Or. 281 (237 P. 674); *E. Henry Wemme Co. v. Selling,* 123 Or. 406 (262 P. 833).

The decision of the court in the case construing the will of the late E. Henry Wemme was unanimous. Mr. Justice RAND wrote the opinion for the court (110 Or. 179, 192-3) and used this direct and positive language:

"The property that the testator intended to donate to the charity is specifically described in the will. There are no words contained in the will by which the property can ever revert to the heirs or to the residuary legatee. The gift was immediate and absolute and vested the title to the property in the trustees as soon as the will took effect. From that moment the property became impressed with the trust and passed beyond the reach of the heirs or residuary legatee. Hence the charitable use of the devised property cannot fail, for, as said by Mr. Justice Story in his note, supra: 'If the charity does not fail, but the trustees or corporation fail, the court of chancery will substitute itself in their stead, and carry on the charity.' The terms of the will were sufficiently definite and certain to constitute a good and valid devise of the trust property to the E. Henry Wemme Endowment Fund. The title to the devised property is vested in that corporation and can never become vested in the heirs or in the residuary legatee."

By the construction placed upon the will this court held in, effect that the title to the property involved in controversy passed from the estate of the said E. Henry Wemme, deceased, as absolutely, completely and effectively as though he had conveyed it by war-

ranty deed without condition, qualification or reservation of any kind prior to his death. Plaintiffs in the instant action have no more claim, right or title, at present or in the future, expectant or vested, contingent or unconditional, than if the property had never been a part of the estate of the benevolent testator.

Again, in *Wemme v. First Church of Christ, Scientist,* 115 Or. 281, 290, this court made this statement:

"Either the Attorney General or the prosecuting attorney was the proper person to initiate the necessary proceedings to have that question determined: 11 C. J., p. 366, §§ 83, 84, p. 368, §§ 89, 90; *MacKenzie v. Trustees of Presbytery of Jersey City,* 67 N. J. Eq. 652 (61 Atl. 1027, 3 L. R. A. (N. S.) 227; *Burbank v. Burbank,* 152 Mass. 254 (25 N. E. 427, 9 L. R. A. 748); 2 Perry on Trusts (6 Ed.), §§ 732, 744. Granting that the new trustees have the authority to institute a suit to recover the title to the White Shield Home, they cannot proceed without making the Salvation Army a party, as well as the Attorney General or the prosecuting attorney for Multnomah county."

Both the foregoing opinions were referred to with approval in *E. Henry Wemme Co. v. Selling,* 123 Or. 406 (262 P. 833). In the last case cited the question is again reviewed thoroughly and the same conclusion reached as in the first Wemme case, 110 Or. 179, above.

■■ Plaintiffs have no more interest in the property involved in this litigation than if they were absolute strangers to the blood of the benevolent testator. The generous fund provided for said home belongs to a public charity and one not interested directly in the administration of that fund or the duly appointed officer of the state cannot maintain a legal proceeding for an accounting or the control of the administration of said fund: 11 C. J., 367; *Clark v. Oliver,* 91 Va. 421

(22 S. E. 175) ; *Dickey v. Volker,* 321 Mo. 235 (11 S. W. (2d.) 278, 62 A. L. R. 858) ; *Cuthbert v. McNeill* (N. J. Eq.), 146 Atl. 881; *Petition of Burnham,* 74 N. H. 492 (69 Atl. 720) ; *Krauthoff v. Atty. Gen.,* 240 Mass. 88 (132 N. E. 865) ; *MacKenzie v. Trustees, etc.,* 67 N. J. Eq. 652 (61 Atl. 1027, 3 L. R. A. (N. S.) 227) ; *Heiskell v. Chickasaw Lodge,* 87 Tenn. 668 (11 S. W. 825, 4 L. R. A. 699). There is no resulting trust in a public charity fund: *Clark v. Oliver,* above.

■ Plaintiffs cite a good many authorities which they claim sustain their right of visitation to said home as heirs of said testator. The plaintiff E. Henry Wemme Company claimed the same right as the residuary devisee and legatee under said will in the suit determined in 123 Or. 406, above. That right was denied to said E. Henry Wemme Company. The matter sought to be detemined in the instant case has been adjudicated and conclusively determined. The cases relied upon by plaintiffs on close examination are not decisive of the question herein involved. In all those cases it will be found that plaintiffs, who were asserting the right of visitation, had some interest in the fund supporting the institution which they claimed the right to visit. That right may have been a mere contingency or possibility, but they had that interest which the court recognized under the particular circumstances and facts involved.

■ In the several cases involving the same question our conclusion was that plaintiffs had no standing in this court to interfere in any way with the conduct and management of the fund. In other words, plaintiffs have not the capacity to maintain the instant suit. We adhere to our former decisions involving the subject-matter. The demurrer to the complaint was

properly sustained. Decree and judgment affirmed with costs and disbursements in favor of respondents.

BELT and KELLY, JJ., took no part in this decision.

BEAN, J., concurs in the result.

———

RAND, J., dissenting. I am unable to concur in the conclusion reached by my associates in the instant case and, since the case is one of vital importance to the public, I will state briefly my reasons for dissenting.

The question presented for decision is whether the heirs at law and next of kin, the brothers and a sister, of a deceased donor, who has devised property of great value to a public charity, can complain of a fraudulent sale of such property in a suit in equity where the trustees, the Attorney General and the fraudulent grantee are all made defendants in the suit. The question is one of first impression in this court. Upon this question there is some conflict of authority in other jurisdictions, but the great weight of authority seems to favor their right to maintain a suit to have the fraudulent sale set aside.

The complaint in this case alleges that the trustees were induced by George W. Joseph, who at the time was representing the trustees as their attorney, to sell a very valuable tract of land belonging to the charity to Hirsch-Weis Manufacturing Company, one of Joseph's clients, for a sum much less than its real market value and, acting upon his advice, the property was sold and the charity thereby sustained a great loss. There was no power conferred by the will for the

sale of the trust property and the method provided by section 6-801 to 6-817, inclusive, Oregon Code 1930, for its sale was not followed, nor was any showing made to the circuit court that the sale of the property would be a benefit to the charity. It would seem, therefore, that the trustees had. no authority to make the sale; that the circuit court was also without authority to authorize or confirm the sale; and that no title passed to the purchaser thereof. Under such circumstances, it would seem to follow that it is the duty of this court to declare the sale void.

As said by Mr. Justice Gray in *Jackson v. Phillips,* 96 Mass. 539: "*  *  *  gifts to charitable uses are highly favored, and will be most liberally construed in order to accomplish the intent and purpose of the donor  *  *  *."

Again, as said in *Printing House v. Trustees,* 104 U. S. 711, at p. 727: "When a charitable trust has been fully constituted and the funds have passed out of the hands and control of the donors, and into the hands of the proper institution, or organization, intended for its administration, the Court of Chancery, or some analogous jurisdiction, becomes its legal guardian and protector, and will take care that the objects of the trust are duly pursued and the funds rightfully appropriated."

Again, in the great case of *Vidal v. Girard's Executors,* 43 U. S. 126, which was a suit brought by the heirs of the deceased donor and in which it was claimed, as here, that the heirs had no interest in the trust fund because donated to charity, the suit was maintained and all questions raised in the case were fully passed upon and decided.

Again, in *Stanley v. Colt*, 72 U. S. 119, which was also a suit brought by the heirs to set aside a gift to charity, where the same contention was made that the heirs had no interest in the subject-matter of the litigagation, the objection was overruled. The court in that case, although denying that the heirs had any right to the property, said:

"On the other hand, if these limitations are to be regarded as regulations to guide the trustees, and explanatory of the terms upon which the devise has been made, they create a trust which those who take the estate are bound to perform; and, in case of a breach, a court of equity will interpose and enforce performance. The estate is thus preserved and devoted to the objects of the charity or bounty of the testator, even in case of a violation of the limitations annexed to it. A fraudulent or unfaithful trustee will be removed, and another appointed to his place. A diversion of the fund will be arrested, and an account compelled for any waste or improvident use of it."

In *Mott v. Morris*, 249 Mo. 137, it was held that the heir of the deceased donor, who conveyed land to a charitable use without power of alienation, had the right to ask the interference of a chancellor to preserve the trust.

In *Chambers v. Baptist Educational Society*, 1 B. Mon. (Ky.) 215, which also was a suit by the heirs of the deceased donor of property given to charitable uses, where, it was contended, as here, that the suit must be brought by the attorney general, the court, in denying that contention, said:

"We think, therefore, that a proceeding in the form of an information, may be prosecuted in chancery, by or in the name of the Attorney-General, against an eleemosynary corporation, to enforce the trust. But while we concede this, we are satisfied that a bill may be filed by the founder, if living, or his heirs, if he be

dead, or by any beneficiary, having an interest in the use, or by any other, having a vested interest in the fund, against the corporation, for a true and faithful execution of the trusts confided to it. Pawling is the founder, and is a party to the contract of donation, and stipulated its terms, and has unquestionably the right to have those terms enforced, and if living, might file his bill for that purpose; being dead, his heirs and representatives, who stand in his place, have also a right to ask of the Chancellor the same measure of justice, and would be indulged in the institution of the like proceedings.''

Again, in *Garrison v. Little,* 75 Ill. App. 402, 417, the court said:

''The only remaining proposition is, that the bequest is void because there are no beneficiaries named who could enforce the execution of the trust. We regard the position as unsound. The persons whom the testatrix intended to benefit, were undoubtedly the women of the United States and its Territories who do not now enjoy the right of suffrage. This is a class of persons numerous and distinct. Should the trustee fail or neglect to apply the fund properly for the purposes designated in the bequest, the heirs of the testatrix, the residuary legatee, or any person interested in the cause of woman suffrage, could, in our opinion, put into operation the machinery of a court of equity to enforce the trust.''

In *Clement v. Hyde,* 50 Vt. 716, a suit brought by the executor of a deceased donor, the court said:

''There is, we think, no doubt but that the State's attorney for the county could compel the enforcement by a proper information, and probably any one as amicus curiae could do the same.''

In the case of *Allen v. McKean,* 1 Fed. Cas. 489, 1 Sumn. 276, Mr. Justice Storey, who also wrote the opinion in the case of *Vidal v. Girard's Executors,* supra, said:

''Every founder of an eleemosynary corporation, (that is, the fundator perficiens, or person, who orig-

inally gives to it its funds and revenues,) and his heirs, have a right to visit, inquire into, and correct all irregularities and abuses, which may arise in the course of the administration of its funds, unless he has conferred (as he has a right to do) the power upon some other person. This power is commonly known by the name of the visitatorial power, and it is a necessary incident to all eleemosynary corporations; for these corporations being composed of individuals, subject to human frailties, are liable, as well as private persons, to deviate from the end of their institution; and therefore ought to be liable to some supervision and control. 1 Bl. Comm. 480. But, what is the nature and extent of this visitatorial power? Is it a power to revoke the gift, to change its uses, to devest the rights of the parties entitled to the bounty? Certainly not. It is a mere power to control and arrest abuses, and to enforce a due observance of the statutes of the charity. Lord Holt, in *Philips v. Bury,* 2 Term R. 352, says: 'The visitatorial power is an appointment of law. It ariseth from the property, which the founder had in the lands assigned to support the charity; and, as he is the author of the charity, the law gives him and his heirs a visitatorial power, that is, an authority to inspect the accounts, and regulate the behavior of the members, that partake of the charity; for it is fit the members, that are endowed, and that have the charity bestowed upon them, should not be left to themselves, (for divisions and contests will arise amongst them about the dividend of the charity,) but pursue the intent and design of him that bestowed it upon them.'

"But the founder may part with his visitatorial power, and vest it in other persons; and when he does so, they exclusively succeed to his authority. No technical terms are necessary to assign over, or vest the visitatorial power. It is sufficient, if, from the nature of the duties to be performed by particular persons under the charter, it can be inferred, that the founder meant to part with it in their favor; and he may divide it among various persons, or subject it to any modification or control by the fundamental statutes of the

foundation. Now, it is a general rule in the construction of charters, that if the objects of the charity are not incorporated, but certain trustees are incorporated to manage the charity, the visitatorial power is deemed to belong to such trustees in their corporate capacity, and so the law is laid down by Lord Holt in *Philips v. Bury,* 2 Term R. 352, 353. This visitatorial power is an hereditament, founded in property, and valuable in the intendment of law; and where it is vested in trustees, there can be no amotion of them from their corporate capacity, and no disturbance or interference with the just exercise of their authority, unless it is reserved by the statutes of the foundation or charter. But, still, as managers of the revenues of the charity, they are not beyond control; but are subject to the general superintendence of a court of chancery, for any abuse of their trust in the management of it."

In support of their contention that the heirs have no authority to bring the instant suit, defendants cite *Clark v. Oliver,* 91 Va. 421; *MacKenzie v. Trustees, etc.,* 67 N. J. Eq. 652; *Dickey v. Volker* (Mo.) 11 S. W. (2d) 278; *Cuthbert v. McNeill* (N. J. Eq.) 146 Atl. 881; *Petition of Burnham,* 74 N. H. 492; *Krauthoff v. Attorney-General,* 240 Mass. 88; and *Heiskell v. Chickasaw Lodge,* 87 Tenn. 668; 11 C. J. 367. A careful reading of the cases cited will show that but three of the authorities cited by defendants maintain their position. The others have no bearing whatever upon the question, although they are cited in the majority opinion as decisive, and in none of the cases cited is fraud alleged.

If the facts stated in the complaint are true, and for the purposes of the demurrer they are admitted to be true, then this court ought, in the interests of justice, to take cognizance of the case and set aside the fraudulent sale.

For the reasons stated, I dissent from the majority opinion.