356 P.2d 631

Jesse B. STONE, Plaintiff and Appellant,

v.

SALT LAKE CITY et al., Chamber of Commerce of Salt Lake City, et al., Zions Securities Corporation, and The Corporation of the President of the Church of Jesus Christ of Latterday Saints, a corporation sole, Defendants and Respondents.

Lynn Fausett and Fiametta Fausett, Petitioners in Intervention and Appellants.

No. 9268.

Supreme Court of Utah.

Nov. 2, 1960.

Burton W. Musser, Murray, Elias Hansen, Salt Lake City, for appellants.

James L. Barker, Jr., and Norman W. Kettner, City Attys., Homer Holmgren, Nielsen & Conder, Fred L. Finlinson, Franklin Riter, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

The plaintiff, Jesse Stone, brought action to enjoin Salt Lake City from selling and conveying two parcels of real property. One is the old Public Safety Building located at First South and State Streets in downtown Salt Lake City, which it proposes to sell to the United States government as a site for a new Federal Building. The other is the Forest Dale Park and Golf Course, a tract of about 65 acres lying just north of 27th South along Ninth East, which it has conveyed to the Church of Jesus Christ of Latter-day Saints (commonly called the Mormon Church) and

hereinafter referred to as the Church,[1] as a site for a junior college.

As to the transaction involving the sale of the Public Safety Building to the federal government, the trial court granted motions to dismiss in favor of all defendants, the Church, Zions Securities Corporation, the Chamber of Commerce and Salt Lake City. As to the other transaction, involving the sale of the Forest Dale Park to the Church, it granted motions to dismiss in favor of all defendants except Salt Lake City. This appeal is from those orders. We consider the two transactions separately.

The First Cause of Action:

In 1959 the federal government had announced its intention to construct a new Federal Building in Salt Lake City and was considering possible locations. It appears that the Salt Lake City Chamber of Commerce and persons representing the interests of the Church were desirous of cooperating with the federal government to obtain a suitable site for the building in downtown Salt Lake City rather than have it built upon land already owned by the government on the Fort Douglas Military Reservation at the eastern outskirts of the city.

Zions Securities Corporation, a corporation wholly owned by the Church, attempted to purchase the Lafayette school building and grounds at North Temple and State Streets in downtown Salt Lake City as a site for the building. Burton W. Musser, one of the attorneys for the plaintiff in this action, brought an action to enjoin the school board from selling that property on some of the grounds present in this suit. Following the filing of that case it appears that the project was held in abeyance and that it was decided that it would be better to locate the new Federal Building upon property owned by the City at First South and State Street which housed the City's somewhat antiquated public safety building and a fire station.

The City Commission thereupon scheduled a public hearing to consider the proposed sale of that property. A few weeks later it passed a resolution declaring the existing buildings to be inadequate and obsolete for the needs of the City and advertised for bids to sell it. In response thereto the City received but a single bid, submitted by the defendant Chamber of Commerce, which was accepted by the City. The bid stated that it was made, "for the purpose of delivering the title and possession of said property to the General Services Administration of the United States Government for the construction of a new Federal Building thereon."

---

1. The legal form by which the Church holds property is a corporation sole known as the Corporation of the President of the Church of Jesus Christ of Latter-day Saints.

The attack on the propriety of the sale of the Public Safety Building is on these grounds:

A. That the Chamber of Commerce is acting for the Church and using money which the latter collected and holds in trust for religious and charitable purposes only.

B. That in attempting to control the location of the Federal Building the Church is violating the Utah Constitutional provision requiring separation of church and state.

C. That because a majority of the five city commissioners are members of the Church the proposed transaction is void.

D. That the purported sale by the City was not made in accordance with proper procedures and by ordinance as required by law.

As to A: that the funds collected by the Church must be used for religious and charitable purposes the plaintiff points to the articles of incorporation of the Church (The Corporation of The President):

"Second: The object of this corporation shall be to acquire, hold and dispose of such real and personal property as may be conveyed to or acquired by said corporation for the benefit of the members of the Church of Jesus Christ of Latter-day Saints, a religious society, for the benefit of religion, for works of charity and for public worship * * *."

He urges his rights both as a contributor to such funds and as a member of the class to be benefited by the proper expenditure thereof; and also urges the rights of other members of the Church and of the public similarly to be benefited. We do not regard the disputed point as to whether the stated purposes are limited to members of the Church as being of controlling importance.

It is significant that the plaintiff does not claim that there was any express trust or any condition or restriction placed upon the funds he contributed to the Church. They were simply donated to it and it must be assumed that they were given for the general purposes for which the Church exists. The argument that the money it collects must be used for the purposes stated in its articles of incorporation, "* * * for the benefit of religion, for works of charity and for public worship" may have some merit in that there is an obligation that they untimately be applied to the purposes for which the corporation exists and for which the funds were donated. But it is obvious that all of the funds the Church collects would not be disbursed immediately and directly for such purposes. It is but common sense and common knowledge that there is need for the exercise of management of such funds

for the ultimate accomplishment of the purposes stated. How this is to be done to best serve those objectives is for those in charge of the management of the Church to decide. It may well entail the keeping of collected funds in savings accounts, bonds, real estate or any type of investment which, in the judgment of those in charge, best suits that purpose.

 In connection with the plaintiff (or others similarly situated) donating money to any such an organization, this is to be observed: it is only reasonable to assume that one making such contributions is aware of the controlling authority and of the manner in which the institution is managed. If he does not desire to entrust the management of his money to it, he has the privilege of keeping it and making such disposition thereof as he desires; or in giving it, he may impose conditions of trust which he could require the grantee to agree to in accepting the money. But if he fails to do so, by his act of donating his money he manifests his decision to entrust the control and disposition of his funds to the Church and those who manage it. And the donor has no right to retrieve, control, or direct the manner in which the money so given shall be used simply because he has made such contributions to the Church, nor because he is a member of

the class which may be benefited by the carrying out of its purposes. This is in accord with the majority of the authorities, and what we believe to be the better considered view of the law.[2]

The fact is further that the articles of incorporation of the Church (The Corporation of The President) are fashioned consonant with the above conclusion. In the same paragraph, Second, upon which the plaintiff relies and from which he extracts the language hereinabove quoted relating to its religious and charitable purposes, also contains the following:

"* * * and this corporation shall have the power, without any authority or authorization from the members of said church * * * to grant, sell, rent, mortgage, exchange, or otherwise dispose of any part or all of said property."

 Plaintiff's claim B: that the transaction is in violation of our constitutional provision requiring the separation of church and state rests upon Sec. 4, art. 1, of the Utah Constitution:

"There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions."

It is argued that the Church, directly or through its arm, Zions Securities Corpora-

2. Wemme v. Noyes, 134 Or. 590, 294 P. 602, 295 P. 465; Clark v. Oliver, 91 Va. 421, 22 S.E. 175; Restatement of Trusts 2d, § 391; Dickey v. Volker, 321 Mo. 235, 11 S.W.2d 278, 62 A.L.R. 858.

tion, in purchasing said property for the purpose of turning it over to the federal government, is attempting to control the location of the Federal Building and thus intrude into the affairs of the government. Assuming that the Church's purpose in obtaining this property was to sell it to the federal government, we fail to see how this can be construed as a violation of the above constitutional provision. There is no doubt that the Church can legally purchase and sell property. And just as any other property owner, it can use any legitimate means to persuade a prospective buyer to purchase from it. The transaction does not take on a taint of illegality merely because the solicited purchaser happens to be the federal government or its agency. Its officials are charged with the duty of deciding what property it will purchase and where the Federal Building will be located and are solely responsible for the performance of such duties. No charge is made that there was involved any bribery, collusion, undue influence or other impropriety. To expect a court to infer from the sole fact that the parties involved are the Church and the federal government that there must be some improper influence exerted upon the latter would involve farfetched and unrealistic conjecture. We are in accord with the view taken by the trial court that in the absence of any specific charge of impropriety other than the nature and relationship of the parties that there is nothing shown which would justify a conclusion that the transaction involved any attempt on the part of the Church to "dominate the State or interfere with its functions."

◼ In support of C: that the contract is void because a majority of the five city commissioners are members of the Church, plaintiff cites Section 10–6–38, U.C.A.1953, which makes void any contract where an officer of the city " * * * shall be directly or indirectly interested * * * in the purchase of any real estate or any other property * * *" belonging to the city. He urges that because of membership in the Church they should be deemed to have an interest in the transaction. This is commonly referred to as the "conflict of interests rule" and has been held to make a contract void if the Commissioner is a stockholder in a corporation contracting with the City.[3] But the rule is not applicable here because our situation falls well outside of that orbit. As pointed out above, membership in the Church does not give an individual ownership or control over any of its funds or property. This applies to the commissioners the same as it does to the plaintiff. The commissioners as members of the Church may have a remote expectancy of participating in its beneficences under particular circumstances. But this is a

---

3. Foster v. City of Cape May, 60 N.J.L. 78, 36 A. 1089.

matter of grace to be determined by the Church management, and is not a matter of right. No matter how great the benefit to be derived, or the detriment to be suffered by the Church in this transaction, neither would redound to the benefit or the detriment of these commissioners as individuals. Thus the "conflict of interests" reason for forbidding contracts between the city and officials interested in the subject matter does not exist here. It is uniformly held that the "interest" referred to in such a statute means that the official must have a "personal and pecuniary interest" in the subject matter.[4]

Neither are we impressed with the contention that because of their membership in the Church the commissioners would be subject to the control of its authority and thus should be disqualified to act under the statute just discussed. To assume that they would betray their public trust and subvert the interests of the City to those of the Church would require the conjecture that they are bent on wrongdoing and violating their oaths of office. Such conjecture the law will not indulge, but in the absence of a specific charge to the contrary, right conduct is always presumed.

Upon this point of "conflict of interest" the extension of such a rule under the circumstances here shown would go far beyond the evil against which it was directed and likely would create evils of its own. Merely being a lay member of the Church could result in placing a handicap upon Church members as public officials: (a) by limiting their proper actions as such officials; (b) and by limiting the rights of entities they might represent; and (c) by limiting the prerogatives of churches to deal with public entities whose officials happened to be its members. Suffice it to say that we do not regard bare membership in the Church under the circumstances presented here as rendering the commissioners "directly or indirectly interested" in the purchase of such real estate within the meaning of Sec. 10–6–38, U.C.A.1953, which makes such a transaction void.

In regard to D: the charge that the City did not follow proper procedure and did not by ordinance dispose of this property, this is to be said: the City is endowed with general powers to buy and sell property for its own benefit. Section 10–8–2, U.C.A.1953, provides:

> "They may * * * provide for payment of debts and expenses of the corporation; may purchase, receive, hold, sell, lease, convey and dispose of property, real and personal, for the benefit of the city * * * and may do all other things in relation thereto as natural persons * * *."

4. See McQuillin, Municipal Corporation § 29.97, p. 390; 63 C.J.S. Municipal Corporations § 991.

We are aware that there is dicta in two early cases, McDonald v. Price[5] and City of Ogden City v. Bear Lake & River Water-Works & Irrigation Co.,[6] suggesting that the above statute does not give a city an unlimited right to convey property; and also in the recent case of Rowley v. Milford City[7] that in order to vacate and sell part of its park the City of Milford must pass an ordinance. However, it should be noted that the McDonald and the Ogden City cases just referred to dealt with streets and alleys, and that the Rowley case dealt with a park; and that there is a specific statute, Section 10-8-8, U.C.A. 1953 which confers powers upon cities in relation to "*streets, alleys,* avenues, boulevards, sidewalks, *parks,* airports and public grounds" and authorizes a city to vacate them by ordinance. The familiar and universally recognized rule is that general terms following specific terms are interpreted to mean things of like character.[8] While those cases are sound as to streets and parks, we can see nothing in that statute which would require the sale of the Public Safety Building to be considered as coming within its terms. Nor do we find any express provision in our statutes which would prohibit the procedure followed here.

We are entirely in accord with the contention that it is desirable and proper that sales of such public property be openly and fairly conducted. The essential of procedural requirements of that character is that there be notice, a reasonable opportunity for those interested to appear and be heard, and that fairness in the procedure in connection with the sale be observed. While the City may have followed some other method than it did, its procedure in publicizing the proposal, holding a public hearing, adopting a resolution declaring the property obsolete and soliciting bids for its sale encompasses the basic elements of propriety in dealing with such public business. There is no allegation that there was any secrecy, subterfuge, fraud or other impropriety, and we therefore see no basis upon which the transaction could be declared invalid upon the ground under consideration.

The foregoing discussion indicates that the first cause of action, as to the Public Safety Building transaction, was properly dismissed as to all principal defendants. This renders it unnecessary to consider an additional and collateral contention: that the Chamber of Commerce was an indispensable party in that cause of action.

The Second Cause of Action:

The cause of action relating to the Forest Dale Park was dismissed in favor of

5. 45 Utah 464, 146 P. 550.
6. 16 Utah 440, 52 P. 697, 41 L.R.A. 305.
7. 10 Utah 2d 299, 352 P.2d 225.

8. See Hatch Co. v. Public Service Comm., 3 Utah 2d 7, 277 P.2d 809, and authorities therein cited.

the defendants, Zions Securities Corporation, the Chamber of Commerce, and the Church, but was not dismissed as to Salt Lake City. Since the latter two parties, the Church and Salt Lake City were the only parties to the transaction, the dismissal in favor of the other two defendants was proper.

Inasmuch as the trial court refused to grant the City's motion for dismissal, and the City has not cross-appealed from that ruling, leaving that cause of action pending before the court, we now confront the question whether the Church is a necessary party to that cause of action.

In this second cause of action the sale of the Park to the Church is attacked on two of the grounds hereinabove discussed which related to the first cause of action, that is, C, that the city commissioners were members of the Church and D, that the sale was not made by proper procedure and by ordinance.

 In considering whether the granting of the motion to dismiss the Church from the second cause of action was proper, it is to be borne in mind that one should be regarded as a necessary party to a law suit if he has rights or interests involved in the subject matter in such a way that his presence is essential to a full, fair and equitable determination of his rights and those of other parties to the suit.[9] It has been held, and we think correctly so, that this includes the grantees of deeds, the validity of which is under attack.[10] If the court were to determine that the City was without power to execute the deed it made to the Church, that would certainly affect the latter's rights as a grantee. It is therefore obvious that the Church should be regarded as a necessary party to the second cause of action and that the motion to dismiss as to it should have been denied.

The final point we turn to is the contention on behalf of Lynn and Fiametta Fausett that they should have been allowed to intervene in the action. In this decision we have treated the plaintiff Stone as having all the rights claimed by the Fausetts and have addressed the issues in the same manner. Inasmuch as their status and their rights would not have been different than his, we can see no useful purpose in making any determination of that ruling now. However, upon remand, if they desire to be parties as to the second cause of action, there is no reason why they should not be joined.

As to the first cause of action, the Public Safety Building transaction, the judgment of dismissal in favor of all defendants is affirmed.

9. See McClure on Behalf of Caruthers v. Donovan, 33 Cal.2d 717, 205 P.2d 17.

10. Baten v. Nona-Fletcher Mineral Co., 5 Cir., 198 F.2d 629.

**206**

As to the second cause of action, the Forest Dale Park transaction, the judgment of dismissal in favor of all parties is affirmed, except as to the Church. As to it the order is reversed and the case is remanded for such further proceedings as may be deemed proper. No costs awarded.

WADE, McDONOUGH and CALLISTER, JJ., concur.

HENRIOD, Justice (concurring in result).

I concur in the result, but reserve any opinion as to the legality of the procedure followed by the City in its sale or attempted sale of the park property. It appears that parks are governed by Section 10–8–8, U.C.A.1953, authorizing only that they be *vacated*. Whether any such statute was considered or followed or was applicable before the sale or attempted sale is not clear.

I do not agree with the main opinion's statement that "in the recent case of Rowley v. Milford City that in order to vacate and *sell* part of its park the City of Milford must pass an ordinance." That question was not before us in that case, and we simply held that the supplemental answer sought to be filed may have stated a defense to part of the relief prayed for, in the light of facts occurring after the suit was filed showing compliance with the statutes justifying a subsequent sale. (Emphasis ours.)