CHARLES P. FOSTER AND JOSEPH P. HENRY v. THE CITY OF CAPE MAY, THE CITY COUNCIL OF THE CITY OF CAPE MAY, J. ASHTON WILLIAMS, RECORDER OF THE CITY OF CAPE MAY, AND THE FRANKLIN ELECTRIC LIGHT COMPANY.

1. Where the power to make a contract is by law vested in the common council of the city, it is not competent for the common council to delegate authority to one of its committees to enter into a contract for lighting the city for the period of five years.

2. Such a contract should either be negotiated by the common council or, if the negotiations are conducted by a committee, should be submitted to the common council for discussion, consideration and adoption.

3. A provision in a city charter providing that no member of the city council shall be directly or indirectly interested in any contract the expense of which shall be paid from the city treasury, makes no discrimination with respect to the interest which should disqualify.

On *certiorari*.

Argued at November Term, 1896, before Justices DEPUE, MAGIE and GUMMERE.

For the plaintiffs, *Edward Ambler Armstrong*.

For the defendants, *Samuel H. Grey*.

The opinion of the court was delivered by

DEPUE, J. This writ brings up proceedings of the city council of Cape May for the lighting of the streets with electric lights.

The city of Cape May was incorporated by an act passed in 1875. *Pamph. L., p.* 206. Section 40 of the charter provides that the city council shall have power to provide lamps and gas fixtures and light the streets and public places of every description in said city. By an act passed May 22d, 1894, it was enacted: "That it shall hereafter be lawful for the common council * * * of any city * * * authorized to act in such matters from time to time, and, by ordinance or resolution, to order and cause any public street or streets, place or places, or any parts thereof, in any such city, * * * to be lighted with gas, electric lights or otherwise, and for that purpose to erect and maintain, or cause to be erected or maintained, all necessary and proper posts, poles, lanterns and fixtures on any or all of the public roads, streets, lanes or alleys, and to make and enter into any contract or contracts with any other party or parties for any term or terms not exceeding five years."

On the 19th of March, 1896, the Franklin Electric Light Company submitted to the city council the following communication:

*"To the President and Members of City Council:*

"The Franklin Electric Light Company hereby agrees to light the city of Cape May with as many electric lights as may be needed, and such lights to be similar to those lights now in use by said city, for a period of five years from the 15th day of May next, all night and every night, from dusk to sunrise, for the sum of thirty-five cents per night for each light so furnished. We agree to furnish such additional lights as the city may need during the summer months, upon the same terms and at the same rate. We further agree, in the event of the acceptance by the city of the above-stated proposition, that said company will, on or before the first day of July next, move its present plant within the city limits, increase the capacity of the same and add thereto a fifteen-hundred incandescent light plant."

Other electric light companies also submitted propositions for lighting the city with electric lights. At the meeting of the city council held on the 13th of April, 1896, a resolution was adopted: "That the Committee on the Protection of Property be and is hereby authorized to enter into a contract with the Franklin Electric Light Company to light the city with a sufficient number of electric lights to properly light the city, at thirty-five cents per light per night, for a period of five years, provided said company shall, by the first day of July next, increase its present plant and install an incandescent plant, in accordance with the proposition of said company, bearing date March, A. D. 1896."

This writ of *certiorari* brings up the above resolution.

The city claims the power to enter into a contract with the Franklin Electric Light Company for lighting the city, under the provisions of the act of 1894. The act of 1894 confers the power on the common council, in its representative capacity, to make contracts within the purview of the power granted by the act.

The contention on the part of the city is that, having power to make such a contract, it was competent for the city council to delegate the authority contemplated by the resolution to one of its committees. *Green* v. *City of Cape May*, 12 *Vroom* 45, and *Burlington* v. *Dennison*, 13 *Id.* 165, were cited to sustain this contention. Neither of these cases is applicable to the subject-matter of this proposed contract. In each of these cases the power delegated to a committee was the power to purchase a steam fire-engine, a power that was essentially ministerial. The power conferred by the act of 1894 is a power to enter into a contract comprising one of the most important functions of the city government and extending over a period of five years. Such a contract would necessarily involve an expenditure of a large amount of public money. A contract of this character should be entered into after the most careful consideration and made under the seal of the city, with all the formalities appropriate to the execution of contracts of so much importance. The proposition made by

the electric light company was to furnish as many electric lights as might be needed, the lights to be similar to those now in use by the city, with an agreement to furnish such additional lights as the city might need during the summer months, the price named being thirty-five cents per night for each light so furnished, and the period over which said contract should extend being five years. The resolution under review authorized the committee to enter into a contract with the electric light company " to light the city with a sufficient number of lights to properly light the city, for thirty-five cents per light per night, for a period of five years." The resolution did not contemplate any official action of the governing body of the city with respect to the negotiation of the terms of the contract, or of its details, or of its execution. The power purported to be conferred upon the committee was to make the contract, the common council making no prescription as to terms except those above mentioned.

We think that a contract such as was contemplated by this resolution should either have been negotiated by the city council or, if the negotiations were conducted by a committee, should have been submitted to the city council for discussion, consideration and adoption, and that the resolution delegating power to make such a contract was not warranted by the statute in question.

Another objection to this resolution is that Johnson, a member of the city council who voted for the resolution, without whose vote the resolution could not have been adopted, was interested in the contract it purported to authorize. Section 84 of the city charter provides that no member of the city council shall be directly or indirectly interested in any contract the expense of which shall be paid from the city treasury. Johnson testified that he held the certificate for one share of the stock of the Franklin Electric Light Company, that was given to him by Lafayette Miller, as collateral security for a debt that was still unpaid ; that the certificate had never been formally assigned to him, and that he would have handed it back to Miller if he had asked for it. He also

testified that he never put any value on the stock and that
the company had not been prosperous. It is probable that a
company which theretofore had not been prosperous may
become prosperous, and its stock, which was valueless, may
become of value by means of this contract which Johnson's
vote awarded to the company. The interest of Johnson may
be small, but the statute makes no discrimination with respect
to the interest which should disqualify. In *Traction Com-
pany* v. *Board of Works*, 27 *Vroom* 431, which was decided
on the general doctrine of the law, independently of any
statute, the ordinance was held to be voidable because one of
those participating in its adoption was specially interested,
and it will be observed that no allusion is made in the
opinion to the nature or amount of interest which should dis-
qualify. At common law, under which interest disqualified
a person as a witness, the exact amount of the interest which
disqualified was immaterial. However small and inconsid-
erable it might be, the witness was incompetent. "A person
who loses or gains the smallest sum by the event of the suit,
whatever might be his rank, fortune or character, was as
incompetent to give evidence as one who might be interested
in thousands. This was the unavoidable consequence of the
general rule. If interest be allowed to disqualify in any
case it must in all, as it is impossible, by any scale, to
measure the different effects which it may have on different
minds." 1 *Phil. Ev.* (3d ed.) *p.* 86. By statute, the disquali-
fication of interest in witnesses has been removed, but such
interest may be shown for the purpose of affecting the credit
of a witness. *Gen. Stat., p.* 1397, § 3. In the construction
of statutes such as the one in hand, and in dealing with the
principle upon which the case in 27 *Vroom* was decided, a
severer rule must be applied. If the vote of an interested
member of the common council be admitted it must be re-
ceived as absolute verity. No power exists in this or any
other court to set on foot an inquiry to ascertain whether, or
to what extent, his official conduct was influenced by his
interest in the subject in which he is supposed to act exclu-

sively for public benefit. The whole subject is discussed with great learning and research by Mr. Justice Bedle in *State, Winans* v. *Crane,* 7 *Vroom* 394, 398.

This resolution must be declared invalid for both the reasons considered.