FRED. KRAFT, PROSECUTOR, v. THE BOARD OF EDUCA-
TION OF THE TOWNSHIP OF WEEHAWKEN, &c., ET
AL.

Submitted December 5, 1901—Decided February 24, 1902.

1. A board of education organized under "An act to establish a
   system of public instruction" [Revision of 1900] (*Pamph. L., p.*
   192), in seeking proposals for a contract to supply school furni-
   ture, may lawfully delegate to a committee of its body the duty of
   preparing and submitting the specifications for such purpose and
   of conducting negotiations for the contract; provided, the pro-
   posals and the result of the negotiations are first reported to and
   considered by the board before final action in awarding the con-
   tract.
2. When municipal corporations are acting within the power and dis-
   cretion vested in them by the legislature the courts cannot inter-
   fere unless fraud is shown or the power or discretion is being
   manifestly abused to the injury or oppression of the citizen.
3. Where the statute does not require a municipal body to invite pro-
   posals and award its contract for the purchase of supplies to the
   lowest bidder, it may, after inviting and receiving proposals, act
   independently of them in awarding the contract, provided its
   power to do so is exercised *bona fide* and with reasonable discre-
   tion, having regard to the public good.

On *certiorari.*

Before Justices DIXON and HENDRICKSON.

For the prosecutor, *J. Emil Walscheid.*

For the defendant the board of education, &c., *John H.
Bonn.*

For the defendant George V. Denzer, *Albert Leuly.*

The opinion of the court was delivered by

HENDRICKSON, J. The prosecutor, who is a taxpayer of
the township of Weehawken, in the county of Hudson, has
brought to this court, on *certiorari,* a resolution of the board

of education of said township, awarding to the defendant. George V. Denzer a contract for a supply of desks and chairs for the new high school building then in course of erection. The resolution was passed September 25th, 1901, awarding the contract, and this proceeding is brought to set it aside.

The grounds upon which the court is asked to intervene are, briefly stated, unlawful delegation of duty and discretion, and fraud or bad faith in awarding the contract. It is admitted by counsel of the prosecutor that, under "An act to establish a system of public instruction" [Revision of 1900] (*Pamph. L., p.* 192), the board was competent to contract for school furniture without public competition. It is contended, however, that the board could not delegate this power to a committee constituted by that body, and that in this case, although the resolution awarding the contract was adopted in due form by the board, yet it had so delegated to the committee the duty of inviting proposals and submitting specifications that the final action of the board was only perfunctory in character. In support of this contention we are referred to the case of *Foster* v. *Cape May,* 31 *Vroom* 78. It was there held that to enter into a contract of public lighting for five years, under authority specially provided by the statute, was so important a function of the city government that a resolution delegating such power to a committee was not warranted by the statute. Where, however, the power to purchase is only ministerial or administrative, it may be delegated to a committee of the corporate body created for that purpose. This principle is conceded in the case last named, and was sustained by the Court of Errors in *Burlington* v. *Dennison,* 13 *Id.* 165. From the view we have taken of this case it is unnecessary to determine to which class the power here sought to be exercised belongs, and whether it could be delegated to a committee of the board, for, as already appears, the resolution received the sanction of the corporate body. And even where such corporate action is necessary, the fact that the negotiations have been conducted by a committee created for that purpose will not invalidate the resolution awarding the contract, provided the result of such negotia-

tions is first reported to the corporate body and there discussed and considered before final action. *Green* v. *Cape May,* 12 *Id.* 45; *State* v. *Jersey City,* 3 *Dutcher* 493; *Burlington* v. *Dennison, supra; Foster* v. *Cape May, supra.*

The prosecutor, in support of his first point, calls attention to the following facts: The board, at a special meeting held August 15th, 1901, accepted a report of the committee of three on school furniture, recommending, after examination of numerous samples, the adjustable chair desk as the one that should be purchased for the new school. It thereupon ordered that the committee be empowered to draw up specifications and invite bids for school desks for the new high school. The specifications that were afterwards drawn by the committee were not first passed upon by the board before they were sent to dealers to invite bids. It should also be stated that the bids or estimates for the furniture, which were accompanied by samples, were received by the board at a special meeting on September 16th, 1901, and referred to the committee of the whole. The committee of the whole had a meeting, at which the members of the board were all present, and, after examining the samples, decided, by a majority vote, to adopt the Sauder desk, at $4.45 per desk. Before the adoption of the resolution awarding the contract a report of the committee of the whole of their action was made by the chairman thereof, who explained to the board the reasons why this style of desk, which was the larger in price, had been selected. A resolution was then adopted, by a vote of six to three, awarding a contract for the desk approved by the committee of the whole.

We think the board is not chargeable with having delegated its power and duty, and that, upon the principle above stated, its validity cannot be questioned on that ground.

In considering the second ground we are met by the rule of law that when municipal corporations are acting within the powers or discretion vested in them by the legislature, the courts cannot interfere, unless fraud is shown or the power or discretion is being manifestly abused to the injury or oppression of the citizen. *Cape May, &c., Railroad Co.* v.

*Cape May,* 8 *Stew. Eq.* 419; *Van Reipen* v. *Jersey City,* 29 *Vroom* 262; *Oakley* v. *Atlantic City,* 34 *Id.* 127; *Ryan* v. *City of Paterson,* 37 *Id.* 533; 2 *Dill. Mun. Corp.* (*4th ed.*) 908; 15 *Am. & Eng. Encycl. L.* 1046.

It is not shown, by any direct evidence, that the members of the board, or any of them, were governed in their action by corrupt motives or were to be benefited personally in any way by the award of the contract. But it is argued that we should infer fraud or palpable abuse of discretion from the facts and circumstances in evidence. The averments of fact made to sustain this suggestion are the failure to invite greater competition by preparing the specifications more in detail; the limiting of the number of desks to be purchased to two hundred, while the capacity of the building was five hundred; the highly exorbitant price, as alleged, for the goods; the making of the successful bid in the name of Denzer, when, in fact, it was the bid of the Sauder company, and that the reasons offered by the board in its record for making the selection are false. The reply, as made by the members of the board in their testimony, is that the specifications called for a No. 1 adjustable pupil's chair desk, either separate or in combination, in three sizes, the goods to be delivered in good order, placed in position and fastened to the floors where necessary, samples to accompany the bid, and the right reserved to make any selection, irrespective of price; that since the sample was to accompany the bid, it became unnecessary to specify size and character of materials and other particulars; that the limiting of the bid to two hundred desks was because it had been determined that two hundred chairs would be all that would be needed for some time to come. As to the alleged falsity of the reasons offered by the board, it may be stated that these reasons were given to the board by the chairman of the committee of the whole, in reply to its request. The reasons given, so far as the minutes show, were that the Sauder desk would be the cheaper in the end; that it had larger and heavier castings, also the plus and minus arrangement, which would give better satisfaction. The only competing desk referred to in this con-

troversy is the Chandler desk, which was offered at a bid of $3.80. The reasons for the selection made, as amplified in the testimony, were that the castings for the Sauder desk were a single piece coming up to the top of the desk and embracing its corners, while that of the Chandler desk was in two parts and only reached to the bottom of the desk; that, upon testing the two samples, the former appeared to be the stronger. The plus and minus arrangement, which is a device that causes the desk and chair to recede from each other when adjusting them to suit the size of the pupil, was present in the sample of the Sauder company, but was absent in the Chandler sample. It should be stated, however, that the Chandler salesman offered to furnish a similar device without additional cost. While these points of comparative advantage are the subject-matter of much conflicting testimony, taken under a rule of the court, we find ourselves unable to say that the board acted improvidently, or even unwisely, in determining these points of advantage in favor of the Sauder desk.

Upon the question of whether the price is highly exorbitant, it may be stated that there was the testimony of two witnesses, who were interested in making the sale of the Chandler desk, that a Sauder desk, like the sample in question, had been offered, upon bids made in several cities of this state, at prices ranging from $3.50 to $4; but it was admitted in most of these cases the bid did not, as in this case, include transportation and setting up in the school building; nor did it appear that the members of the board had any knowledge that the Sauder company had filed bids in the cities mentioned. In most of these cities it appears that, in fact, the bid for the Sauder desk had been rejected. It further appears that the Sauder desk had been recently made and patented, claiming an improved device in the plus and minus movement. There are so many conditions that may enter into the variations in the price of such supplies that we would not feel warranted, upon the evidence, in sustaining the charge that the price named was in this case exorbitant, nor can the body be said to have acted in bad

faith in not accepting the lowest bid. A municipal body may award a contract independently of the proposals it may have invited, provided the power to do so is exercised *bona fide* and with reasonable discretion, having regard to the public good. *Oakley* v. *Atlantic City,' supra.*

It is plain, we think, that no palpable abuse of discretion has been shown, and hence we are compelled to withhold our interference. The resolution must therefore be affirmed, with costs.