JERSEY CITY SUPPLY COMPANY, PLAINTIFF IN ERROR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY, DEFENDANT IN ERROR.

Submitted December 5, 1904—Decided March 6, 1905.

A municipal corporation cannot be held bound by either an express or an implied contract in defiance of express restrictions imposed by law as limitations upon the powers of the corporate agents through whose instrumentality the contract is sought to be derived.

On error to the Hudson county Circuit Court.

For the plaintiff in error, *James J. Murphy.*

For the defendant in error, *Robert Carey.*

The opinion of the court was delivered by

PITNEY, J. This is an action to recover for goods alleged to have been sold and delivered by the plaintiff to the defendant. It was tried before the judge of the Circuit Court, without a jury, upon an agreed statement of facts, and resulted in a judgment for the defendant. A bill of exceptions, returned with the writ of error, challenges the legal correctness of the judge's ruling that upon the admitted facts the plaintiff below was not entitled to recover.

The facts were that the goods in question were furnished and delivered by the plaintiff upon the requisition of the president of the board of fire commissioners of Jersey City; thereafter plaintiff's claims for payment were presented to and passed by the fire board; their resolutions passing the claims were sent to the mayor, who in due season interposed his veto; the question of overruling the veto was brought before the board, and the board refused to overrule it. There was no other authorization for the purchase of the goods than the requisition of the president of the fire board. None of his requisitions amounted in value to $500.

In *Car Spring and Rubber Co.* v. *Jersey City*, 35 *Vroom* 544, which related to purchases alleged to have been authorized or ratified by the board of street and water commissioners, there were two classes of claims for goods furnished to the city without previous authorization by the board for the purchase. This court held—*first*, as to one class, that a resolution of the board submitted to and not vetoed by the mayor, whereby payment was ordered after receipt of the goods, amounted to a ratification of the purchase and bound the city; and *secondly*, with respect to the other class, there being neither previous authorization nor subsequent ratification by the board, nor any knowledge on the part of the board of the purchase, requisition or use of the goods, that no contract to pay for them by the city would be implied.

In the present case, it is insisted that the resolutions of the board of fire commissioners approving the bills amounts to a ratification of their previous purchase, notwithstanding the mayor's veto; and, failing this, that the adoption of the reso-

lutions by the board imports knowledge of the requisition of the goods and their acceptance and use, from which an implied contract on the part of the city to pay for them may be raised.

The agreed statement of facts sets forth, in terms, that the goods were "used by the city," and this expression furnishes the chief support for the contention that the municipal corporation is liable upon an implied undertaking to pay for them.

It is well settled, however, that a municipal corporation can act only through its authorized agents, and that where the powers of the corporation or its agents are subjected by law to restrictions with respect to the subject-matters of contract, or to restrictions as to the form and method of contracting that are limitations upon the power itself, the corporation cannot be held bound by either an express or an implied contract in defiance of such restrictions. Thus, where by law a municipal corporation is disabled from making an express contract for a certain purpose, it cannot be liable upon an implied contract having the same subject-matter. A like result follows when the law prescribes limitations with respect to the mode in which contracts are to be made, with intent thereby to limit the powers of the corporate agents. As was said in the Supreme Court, in *Cory* v. *Freeholders of Somerset,* 15 *Vroom* 445 (at *p.* 455) : "Where the charter authorizes a contract to be made by the corporate body in a certain mode, whereby the power of such body is intended to be limited, its officers and agents cannot bind it in any other manner. In such cases only a limited power is granted, and consequently an act done beyond the scope of such power is void." Citing *Brady* v. *Mayor, &c., of New York,* 20 *N. Y.* 312.

In the present case, therefore, we cannot accept the statement that the goods were "used by the city" as conclusively showing that the legal entity, the municipal corporation, had the benefit, if at the same time the statement of facts shows that the use of the goods was by agents acting *ultra vires,* without approval by those agents who alone had power to

bind the city. In short, the state of the case, fairly interpreted, shows merely that the goods in question were consumed or used by the members of the fire department, and the law, as we shall presently see, gives to such members no power, as municipal agents, to consume goods save such as are purchased by the authority of the board. At the same time, we may observe the limitations placed by law upon the powers of the board itself. .

By the "Act to reorganize the local government of Jersey City," passed March 31st, 1871 (*Pamph. L., p.* 1094), the powers of the city government were vested (section 5) in a mayor and certain.boards of government, among which was a board of fire commissioners, to consist of five persons. To each of these boards was allotted a certain department of the municipal government. By section 114 the board of fire commissioners was given the entire control and management of the fire engine houses and of the fire engines and other apparatus of every description belonging to the city, connected with or appertaining to the fire department. By section 117 this board was authorized to purchase and hold any personal property deemed by them necessary for the purpose of extinguishing fires, provided their expenditures should not exceed the amount appropriated to their use. By section 159 it was provided that no purchase of personal property should be made by or on account of any board or department of the city government, to an amount exceeding $500, excepting after advertisement, &c.

By a supplement of March 24th, 1873 (*Pamph. L., p.* 400, § 2), it was enacted that the mayor should not be *ex-officio* a member of any of the boards of the city government, but should have power to veto the action of any board within ten days thereafter, and unless said board should by two-thirds vote, at its next meeting after receiving notice thereof, vote to sustain said action, notwithstanding the veto, said action should be void.

By the act of April 6th, 1889, entitled "An act concerning the government of cities of this state" (*Pamph. L., p.* 187), admittedly adopted by Jersey City pursuant to the refer-

endum contained therein (see *In re Cleveland,* 23 *Vroom* 188), it was provided, in section 22, that the fire department should be reorganized, governed and managed by a board of three fire commissioners, the acts of two members to be the act of the board, and such board to be substituted for and to become invested with and to perform the powers and duties of the previous board of fire commissioners. By section 19 of this act power was given to the mayor to veto the acts of any board of the city, and copies of all resolutions or other matters, duly certified, were required to be furnished to the mayor, he to have ten days in which to consider them in each case before signing or returning them to the boards, respectively, with his objections, the board being authorized to pass any resolution or other matter, notwithstanding the objections of the mayor, by a vote of two-thirds of all its members.

Under this legislation, the powers of the municipal government of Jersey City, with respect to the purchase of personal property for the use of the fire department, are clearly restricted in such manner that no purchase binds the city, nor can it be deemed to be the act of the city, unless it be authorized, or at least ratified, by a majority of the members of the board of fire commissioners, and the action of the board or its majority, in this respect, is subject to the veto power of the mayor, who, to this extent, is made a participant in the functions of the board, so that without his approval or acquiescence the action of the board is a nullity, unless his veto be expressly overruled.

It is plain that the mayor's veto is as much a limitation upon the powers of the board as is the requirement of advertising where the purchase exceeds $500 in amount.

In the present case, it appears that the requisition of the goods by the president was not previously authorized by the board. Had it not been for the veto of the mayor, the subsequent resolutions of the board approving the claims of the plaintiff would have amounted to a ratification of the purchase, and the case would have fallen within the first proposition decided in *Car Spring and Rubber Co.* v. *Jersey City,* 35

*Vroom* 544. But, by the express terms of the statute, the veto of the mayor, not having been overruled, nullified the resolutions of the board and deprived them of force for any purpose now pertinent. And so the case falls within the second proposition of the Car Spring Company case.

It does not appear that the board had knowledge of the requisition or of the delivery of the goods at any time before the plaintiff's claims were presented for payment, and so the query raised in the opinion of the Chancellor, in the case just cited, does not now call for an answer.

We therefore hold that the plaintiff cannot recover upon an express contract, because there was no previous authorization nor subsequent ratification of the purchase by valid act of the board of fire commissioners; and that the plaintiff cannot recover upon an implied contract because, by the charter and the act of 1889, the city is disabled from making an express contract for the purchase of such goods, saving through the instrumentality of the board of fire commissioners, and no action of that board, nor even knowledge by its members of the purchase and delivery of the goods in question is shown, saving by the resolution approving payment, and this resolution being rendered null by the veto for the purpose for which it was passed, cannot be held valid for any other pertinent purpose.

The judgment under review should therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE. DIXON, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 13.

*For reversal*—None.