## SEABOARD CONST. CO. v. ATLANTIC CITY.

No. 10916.

United States Court of Appeals Third Circuit.

Argued Feb. 16, 1953.

Decided April 20, 1953.

Harry Norman Ball, Philadelphia, Pa. (Benjamin F. Friedman, Camden, N. J., Morris L. Weisberg, Philadelphia, Pa., on the brief), for appellant.

Daniel J. Dowling, Atlantic City, N. J. (Murray Fredericks, Atlantic City, N. J., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

1. Oral opinion.

STALEY, Circuit Judge.

Plaintiff recovered a judgment for part of its claim, and it appeals, contending that the entire claim should have been allowed.

Plaintiff was the lowest responsible bidder and was awarded a contract to build five stone jetties for the defendant city. As to four of them there is now no dispute. We are here concerned only with the circumstances surrounding the Vermont Avenue jetty. The contract had been authorized by a formal resolution of the Board of Commissioners of the City of Atlantic City. Among many other things, it[1] fixed the length of the jetty at 245 feet, the elevation (not height) at .34 feet above mean low water, the width of the top, or berm, at 16 feet, and the degree of slope of the sides, at 1¼ feet horizontal to 1 foot vertical. The only variables were the height of the jetty and the width at the bottom. Obviously, the nature of the work made it impossible to determine these measurements beforehand because they would vary depending upon the distance of the sand level below mean low water. Therefore, while the total tons of stone could not be forecast, if the fixed lines were followed, the width of the bottom would fall in its proper place. The cost was fixed at a unit-ton price rather than a definite, total price.

When the construction had progressed to about the two hundred-foot point, plaintiff was told to stop the work because the jetty was higher and wider than called for by the specifications. The stoppage was to afford time for a survey to be made to determine the extent of the discrepancy. When ordered to resume construction, plaintiff, in accordance with directions, stripped the excess stone from the two hundred feet of completed jetty and used it to extend the jetty to the contract length. This forty-five feet was built according to the specifications.

On this appeal, plaintiff seeks to recover a little over $23,000, made up of standby charges incurred during the work stoppage and rehandling charges incurred when it took excess stone from the sides of the jetty and moved it out to complete the last forty-five feet. The district court, sitting without a jury, held that there could be no recovery for these items since plaintiff had been solely responsible for the work stoppage by failing to follow the contract lines. We agree.

In justification of its position, plaintiff argues that the contract gave sweeping powers to the city engineer so that he could make what changes the physical conditions might dictate. It is said that, because excessive erosion and unexpected depth were encountered at the Vermont Avenue site, the city engineer ordered that the jetty be made larger than the contract called for and that that order was binding upon defendant.

Defendant answers that the contract was sufficiently specific about the size of the jetty and that it did not, and, indeed, could not, authorize the city engineer to change the size; that if he did order a change, which is denied, the city was not bound thereby, nor did it ratify or adopt the alleged alteration. Reliance is placed upon the New Jersey statute limiting the contractual power of municipalities.[2] The pertinent part of the statute is as follows: "No municipality shall enter into any contract for the doing of any work, or for the furnishing of any materials, supplies or labor, or the hiring of teams or vehicles, where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder."[3]

Such statutory limitations are quite familiar in local-government law. Their obvious purpose is to afford the maximum protection to the municipality's taxpayers against favoritism, fraud and improvident officials who might wink at charges for

---

1. Included in the contract were the specifications, notice to contractors, advertisement, bid, and the plans.

2. This diversity action comes up from the District of New Jersey, and, thus, we apply New Jersey law. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

3. N.J.Rev.Stat. 40:50–1 (1937), N.J.S.A.

"extras."[4] They should be construed so as to effectuate that purpose. There is no doubt that the courts of New Jersey have kept that thought in mind when applying this statute and others like it.[5]

The New Jersey cases are full of statements to the effect that the municipality is a creature of the legislature and can act only as its creator has authorized.[6] The authorization here is limited as to the manner of its exercise. The city can contract for work but only after advertisement for bids and an award to the lowest responsible bidder. The original contract met these requirements, but as to the claims asserted here, there has been no advertisement, no bids, and no award to the lowest responsible bidder. Consequently, plaintiff is barred because the city has not promised to pay in the only way it is allowed to promise.

Plaintiff does not dispute this much, nor does it deny that the first two hundred feet of work did not comply with the specifications. It contends that, because of excessive erosion, the city engineer changed the specifications pursuant to the power given him by the contract. Our examination of the contract, however, convinces us that no such broad power was delegated, if, indeed, such delegation would be valid if it had been attempted. The aggregate of the powers given to the city engineer amounted, at the most, to the power to police the work to insure that the specifications were being followed; he had no authority to change the plans. Moreover, plaintiff, as are all those who deal with local governing bodies, was charged with notice of the

limitations on the contractual power of the city and its engineer.[7]

The argument based upon excessive erosion loses its force when it is realized, as was pointed out by the district court, that the last forty-five feet of the jetty, built under the same or worse conditions, was constructed in very nearly exact compliance with the specifications.

There is a hint of an argument in plaintiff's brief that, because the city is getting the benefits of the jetty, which everybody seems to admit is adequately serving the purpose for which it was built, it is only fair that the city should pay. The city's governing body and not plaintiff, however, was the one to decide how big a jetty was needed and how much would be paid. There is no evidence that the city ratified or adopted the alleged alteration of the specifications. True, the city is receiving the benefits of the jetty, but there is not much it could do to avoid this now. The defendant here is in the same position as the defendant in Service Commercial Body Works v. Borough of Dumont, Super.Ct. App.Div.1949, 5 N.J.Super. 327, 68 A.2d 892. There the borough accepted the benefit of the unauthorized painting of its fire truck while denying liability for the painting. The court said there was no impropriety in this because there was no feasible way in which the problem could be avoided.

Since plaintiff was responsible for the work stoppage by its failure to stay within the specifications, the extra costs resulting therefrom must be borne by it and not by defendant.

The judgment of the district court will be affirmed.

---

4. A. C. Schultes & Sons v. Haddon Twp., 1951, 8 N.J. 103, 83 A.2d 896, 898; 10 McQuillen, Municipal Corporations § 29.-29 (3d ed. 1950).

5. A. C. Schultes & Sons v. Haddon Twp., note 4, supra; West v. Borough of Monmouth Beach, 1931, 107 N.J.L. 445, 153 A. 495; Foster v. City of Cape May, Sup.Ct.1897, 60 N.J.L. 78, 36 A. 1089; Schwartze v. City of Camden, Ch.1910, 77 N.J.Eq. 135, 75 A. 647.

6. West v. Borough of Monmouth Beach, note 5, supra; Jersey City Supply Co. v. Mayor & Aldermen of Jersey City, 1905,

71 N.J.L. 631, 60 A. 381.; Hoboken Local No. 2 v. City of Hoboken, Sup.Ct.1945, 44 A.2d 329, 23 N.J.Misc. 334, affirmed per curiam, 1946, 134 N.J.L. 616, 48 A.2d 917; App v. Town of Stockton, Sup.Ct. 1898, 61 N.J.L. 520, 39 A. 921; Schwartze v. City of Camden, note 5, supra.

7. West v. Borough of Monmouth Beach, note 6, supra; Hoboken Local No. 2 v. City of Hoboken, note 6, supra; 10 McQuillen, Municipal Corporations § 29.28 (3d ed. 1950); 13 id. § 37.103.