**Reverse and Opinion Filed July 11, 2023**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00665-CV

**CITY OF DALLAS, MAYOR ERIC JOHNSON IN HIS OFFICIAL CAPACITY, AND CITY COUNCIL MEMBERS CHAD WEST, CASEY THOMAS, CAROLYN ARNOLD, ADAM BAZALDUA, TENNELL ATKINS, PAULA BLACKMON, ADAM MCGOUGH, JAYNIE SCHULTZ, CARA MENDELSOHN, AND GAY WILLIS IN THEIR OFFICIAL CAPACITIES, Appellants**
**V.**
**GADBERRY CONSTRUCTION COMPANY, INC., Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-04882**

### OPINION

Before Justices Molberg, Pedersen, III, and Miskel
Opinion by Justice Miskel

The City of Dallas and the other appellants (collectively, the City[1]) appeal

from two orders, one denying the City's plea to the jurisdiction in part, the other

---

[1]The appellants here are the City of Dallas and several of its officials, including its mayor and city council members. A suit against a government official in his official capacity is merely another way of pleading an action against the entity of which the official is an agent. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (citing *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 845 (Tex. 2007)). Because Gadberry's suit against the mayor and councilmembers was, "for all practical purposes," a suit against the City itself, *see id.*, for convenience, we treat all the appellants as collectively included in the term "the City."

granting a temporary injunction to appellee Gadberry Construction Company, Inc. The centerpiece of this appeal is the City's argument that Gadberry did not establish a waiver of immunity for the injunctive relief it sought under Texas Local Government Code chapter 252. We agree. We therefore reverse and dismiss the case.

## I.  BACKGROUND

In 2021, the City launched a construction project it called the "Hi Line Connector Trail," a plan to build several miles of new walking trails to connect two existing trails near the north end of downtown Dallas. To assist with the project, the City enlisted various partners, such as the Texas Department of Transportation (TxDOT), the Circuit Trail Conservancy, and a landscape architecture firm called SWA Group.

The City issued a request for sealed bids from contractors on September 29, 2021. The request for bids invited contractors to obtain copies of the bid documents that would define and govern the project. Shortly after the request, Gadberry attended a meeting where the City and SWA discussed the scope of the project, which, according to the bid documents, would involve seventeen areas of work, including a significant amount of road and traffic signal work in tight urban corridors.

The bid documents contained multiple terms that are relevant to this appeal. For one, they stated that the contract for the project would be awarded to "the lowest

–2–

responsible bidder." The bid documents also provided that the City reserved "the right to reject any and all Bids." More particularly, the bid documents reserved the City's right to reject a bid for any one of several reasons, such as a contractor's history of baseless litigation, a contractor's effort to collude with other contractors to fix prices, or, most pertinent here, a contractor's lack of the necessary integrity, experience, qualifications, or financial capability to complete the project in the manner required by the bid documents. An addendum that was expressly incorporated by reference into the bid documents also reserved the City's right to request information on the contractors' finances, equipment, personnel, and experience. The same addendum warned that contractors "may be required to show evidence that they have successfully completed an equivalent project within the past three years to qualify for this work."[2]

Ultimately, the City received six bids for the project. The lowest bid was Gadberry's at $9.2 million. Next lowest came from a company called The Fain

---

[2]Still other documents reinforced the idea that the City would take a contractor's experience and competency into account, especially as they were demonstrated within the prior three years, in deciding whether the contractor was a responsible bidder. These other documents provided that the contractor's record had to "reflect the experience of the firm in work of the same nature and similar magnitude as that of the project for which bids have been received, and such experience must have been on projects completed within the last three years prior to the date on which bids are received."

However, Gadberry disputes whether these other documents formed a part of the bid documents that governed the award of the project. Gadberry insists that these other documents were instead meant to be used after the contract was awarded to evaluate any new contractors whose services became necessary due to changes in the project as it developed. The City offers little clarification on this point.

Because the state of the record is less than perfectly clear, and because these other documents and their criteria are ultimately unnecessary to our resolution of the appeal, we do not consider their substance in judging this case.

Group, Inc. at $9.9 million. After the City, TxDOT, and SWA reviewed the bids, TxDOT advised the City that it would need to use the criteria listed in the bid documents to determine whether a contractor was qualified.

The City reached out to the three lowest bidders to request more information on their qualifications and for adjustments to the bids. Only Gadberry and Fain responded.

In a January 26, 2022 letter, SWA recommended that the City and TxDOT award the contract to Fain. SWA noted that Gadberry had limited experience on trail projects, particularly ones with extensive street work, larger budgets, and shorter timetables, like the City's project. SWA also noted that when it contacted Gadberry's references, it received "mixed comments." Some references criticized Gadberry's ability to meet project timelines and its excessive change order requests, and although other references praised Gadberry's project management, these references were for smaller projects than the City's trail project.

Days later, counsel for the Circuit Trail Conservancy concurred with this assessment. Counsel's view was that a lack of relevant experience justified disqualification as a responsible bidder under the criteria stated in the bid documents.

In February, the City and SWA jointly wrote to TxDOT recommending that Gadberry be disqualified and that the contract instead be awarded to Fain. In early March, TxDOT gave its blessing for this decision. On March 7, the City notified Gadberry that it had been disqualified due to lack of relevant experience.

Gadberry protested the decision, objecting that it was unaware of the addendum and its requirement to demonstrate relevant, equivalent experience on projects within the last three years. Gadberry asserted that if it had known of this requirement, it would have submitted additional information to demonstrate its suitability. Gadberry also emphasized the roughly $700,000 price difference between its own bid and Fain's.

To address the protest, the City invited both Gadberry and Fain to submit any additional information they wished to share concerning their qualifications. Gadberry responded with a more extensive inventory of its experience that listed nearly forty projects it had completed dating back to 2015, the largest of which was valued at about $9.5 million.

SWA wrote to the City with an updated evaluation. In it, SWA stated that it was already aware of much of the information in Gadberry's revised submission, and the new information was limited to projects outside the relevant range of dates, scope, and project type. For instance, none of the newly listed projects were trail or roadway projects. SWA also noted that Gadberry had done nothing to address the mixed feedback SWA had received from Gadberry's references. SWA continued to recommend disqualifying Gadberry.

The same day that SWA submitted its updated evaluation, the City issued a memo stating that Gadberry had submitted no additional relevant experience that would change the City's view. "Based on this, The City stands behind our decision

–5–

to deem Gadberry Construction [C]ompany non-responsive . . . ." Ultimately, the city council voted to disqualify Gadberry, and it awarded Fain the contract for the project, which, including all alterations, was valued at approximately $11.5 million.

Gadberry filed this suit in May 2022. It noted that the City was required to award the project to the "lowest responsible bidder." Gadberry claimed that title for itself; it argued that its bid was the lowest by a significant margin and that it had provided an "exhaustive" list of sixteen projects in the last three years that demonstrated its fitness for the project. Gadberry alleged that it had followed all the proper procedures for the bid, but the City had retroactively imposed unstated criteria as a basis to disqualify Gadberry in favor of its preferred contractor. In Gadberry's view, the City had articulated "no reasonable basis" for disqualifying it. Gadberry sought declarations that the City's award of the project to Fain was void for violating chapter 2269 of the Texas Government Code and that Gadberry was qualified and responsible for projects such as the City's. Gadberry also prayed for temporary injunctive relief, based on chapter 252 of the Texas Local Government Code, to prevent the City from awarding the project to another contractor.

After a hearing in June 2022, the trial court granted Gadberry a temporary injunction that barred the City and its agents from performing or paying the procurement contract for the project. Gadberry then amended its petition to add SWA and Circuit Trail Conservancy as defendants, asserting that they had

committed tortious interference and negligent misrepresentation that had prevented Gadberry from rightfully obtaining the contract.

The City filed a plea to the jurisdiction challenging Gadberry's claims on three fronts, which mirrored its arguments on appeal. The trial court denied the plea as to Gadberry's claim for injunctive relief under chapter 252, but it granted the plea as to Gadberry's claims under chapter 2269 and dismissed those claims with prejudice. The City appealed both the temporary injunction and the denial of its plea to the jurisdiction. Gadberry did not cross-appeal the dismissal of its chapter 2269 claims.

## II.     TEXAS LOCAL GOVERNMENT CODE CHAPTER 252

In its first three issues,[3] the City contends that the trial court erred by partially denying its plea to the jurisdiction. The City maintains that Gadberry did not establish a waiver of immunity for its claim under chapter 252 of the Texas Local Government Code. According to the City, this chapter gives a governing body absolute discretion to reject any and all bids for procurement contracts, and thus Gadberry did not establish a waiver of immunity to pursue an injunction against the City. The City also emphasizes the evidence that it disqualified Gadberry for the

---

[3]The City brought two separate appeals—one concerning the denial of its plea to the jurisdiction and another concerning the grant of the temporary injunction—and the City filed separate briefs in each appeal. Pursuant to an agreed motion, we consolidated the appeals. Because the City's arguments in the appeal concerning the plea to the jurisdiction are sufficient to fully resolve the case, we focus on the issues in that appeal and do not address the separate issues posed by the City's other brief in the appeal of the injunction.

Furthermore, the City's brief in the jurisdictional appeal argues that the trial court was correct when it granted the plea to the jurisdiction as to Gadberry's chapter 2269 claims. However, Gadberry did not cross-appeal that ruling, and we therefore do not consider these arguments.

legitimate reason that it lacked the necessary, relevant experience to handle a project of this scale and type.

## A.      Statutory Construction

We review matters of statutory construction de novo.  *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 23 (Tex. 2021).  Our objective is to effectuate the Legislature's intent as we find it in the statute's text.  *Id.*  We do not consider statutory provisions in isolation but rather seek their meaning from the statute as a whole.  *Id.* at 23–24.  We presume the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted.  *Id.* at 24.  We rely on the plain meaning of the text unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.  *Id.*  We apply any definitions the statute supplies, but if a term is not defined, we interpret the term according to its ordinary meaning.  *Id.*  We interpret statutory waivers of immunity narrowly.  *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).

## B.      Governmental Immunity & Pleas to the Jurisdiction

A city is not a freestanding sovereign with its own inherent immunity, but it will be extended the state's immunity when acting as the state's agent and performing governmental functions for public benefit.  *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 433–34 (Tex. 2016).  Generally, a government employee sued in his official capacity has the same governmental immunity,

derivatively, as his government employer. *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011).

A plea to the jurisdiction based on governmental immunity challenges a court's subject matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *see Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by establishing a valid waiver of immunity. *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 284 (Tex. 2022). We review a ruling on a plea to the jurisdiction de novo. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022).

If a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 393 (Tex. 2022). When a plea to the jurisdiction challenges the existence of jurisdictional facts, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence implicates both subject matter jurisdiction and the merits of the case. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion. *Id.* The defendant carries the initial burden to meet the summary judgment proof standard for its assertion that the trial court lacks jurisdiction. *Id.* If it does, the plaintiff is then required to show that a disputed

material fact exists regarding the jurisdictional issue. *Id.* If a fact issue exists, the trial court should deny the plea. *Id.* But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

## C. Chapter 252 Contains a Waiver of Governmental Immunity

Gadberry does not dispute that the City-appellants in this case, which are a city and its officials, have governmental immunity; Gadberry seeks to establish a waiver of that immunity.

Chapter 252 of the Texas Local Government Code provides that a contract of the type involved in this case "must be awarded to the lowest responsible bidder." TEX. LOC. GOV'T CODE § 252.043(d). It also provides that "[t]he governing body may reject any and all bids." *Id.* § 252.043(f). If the contract is made without compliance with the requirements of chapter 252, it is void, and the performance of the contract may be enjoined by a person who submitted a bid for a contract for which the competitive sealed bidding requirement applies, regardless of residency, if the contract is for the construction of public works. *Id.* § 252.061(2).

Texas courts have held that chapter 252 effects a waiver of immunity to pursue an injunction. *City of El Paso v. Waterblasting Techs., Inc.*, 491 S.W.3d 890, 898 (Tex. App.—El Paso 2016, no pet.); *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 532–33 (Tex. App.—Austin 2014, no pet.); *see also Dallas Cnty. v. Cedar Springs Invs., L.L.C.*, 375 S.W.3d 317, 321 (Tex. App.—Dallas 2012, no

pet.) (op. on reh'g) (same as to comparable provisions in chapter 262); *Securtec, Inc. v. Cnty. of Gregg*, 106 S.W.3d 803, 815 (Tex. App.—Texarkana 2003, pet. denied) (op. on reh'g) (same). "If a party with standing under Section 252.061 could not sue the municipality, the party would effectively be precluded from enjoining the contract's performance or enjoining payment of money under the contract, leading to the absurd result that the Legislature intended to grant the parties a right without a remedy." *Waterblasting Techs.*, 491 S.W.3d at 898.

### III. GADBERRY DID NOT ESTABLISH A WAIVER OF IMMUNITY UNDER CHAPTER 252

The question is what facts must a plaintiff plead to establish a waiver of governmental immunity under chapter 252.

### A. A Governing Body May Reject Any and All Bids for a Rational Purpose

The City emphasizes the provision that the governing body may reject any and all bids and encourages us to interpret this statutory provision literally. The City argues that, because the Legislature did not limit or constrain a municipality's right to "reject any and all bids," when a municipality exercises that discretion, such action cannot form the basis of an immunity waiver under chapter 252 as a matter of law. The City's interpretation would suggest that any reason a city articulates to reject a bid should suffice to preserve its immunity, no matter how questionable the justification.

However, we do not believe that municipalities enjoy absolute, uncabined discretion in expending public funds. Bidding statutes were enacted for the benefit

of the public, to protect the taxpaying public from fraud or favoritism in the expenditure of government money for public works. *See, e.g.*, *Securtec*, 106 S.W.3d at 815. Followed to its furthest conclusion, the City's interpretation would apparently provide governing bodies with an absolute license for graft in procurement contracts. Under such an interpretation, a city could openly reject any bid but that of the mayor's brother-in-law, or the contractor with an envelope of cash in an outstretched hand, and have its corruption shielded by immunity. There would effectively be no circumstance under which a wronged citizen or bidder could successfully allege or prove that a city violated the competitive bidding requirements by improperly rejecting bids. This would essentially eliminate any waiver of immunity for competitive bidding requirements, despite the Legislature's explicit creation of a cause of action under chapter 252.

The Legislature has authorized municipalities to reject any and all bids—for lawful reasons. The Legislature's words do not imply a grant of authorization for municipalities to act unlawfully. The meaning of chapter 252 "as a whole" concerns safeguarding taxpayer funds, not shielding cities from their misuse. *See Broadway Nat'l*, 631 S.W.3d at 23–24. The City's argument runs directly counter to our precedent and the purpose and historical tradition of our competitive bidding statutes. *See id.* at 24. "[L]owest- and lowest-responsible-bidder requirements have a long history, as a survey of 19th century state constitutions and federal territorial legislation reveals." *Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S.

–12–

668, 683 (1996). "Ensuring that taxpayers receive value for contracts awarded by governmental entities and avoiding corrupt practices is a problem of long standing." *GADV, Inc. v. Beaumont Indep. Sch. Dist.*, No. 1:11-CV-187, 2011 WL 2220242, at *1 (E.D. Tex. June 7, 2011). "Bidding procedures to protect the public treasury from corruption or incompetence have been adopted since colonial times and were part of the reformist response to local officials such as Boss Tweed, of Tammany Hall fame." *Id.* at *1 n.2. "A lowest responsible bidder requirement was placed in the 1876 Texas Constitution in response to the granting of government contracts for fuel and printing at exorbitant prices as special favors to friends or relatives of those wielding governmental powers." *Id.* at *1 (internal quotation omitted).

The purpose of competitive bidding provisions "is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners." *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. App.—Dallas 1951, no writ). The "obvious purpose" of provisions concerning lowest responsible bidders "is to afford the maximum protection to the municipality's taxpayers against favoritism, fraud and improvident officials who might wink at charges for 'extras.'" *Seaboard Constr. Co. v. Atl. City*, 204 F.2d 163, 164–65 (3d Cir. 1953). "They should be construed so as to effectuate that purpose." *Id.* at 165.

Consistent with that purpose, we interpret the provision that a governing body may "reject any and all bids" as a signal of *additional* discretion, not *unlimited*

–13–

discretion as the City advocates. Our court has held that, where the rejected lower bidders failed to plead or prove any illegality, arbitrariness, or abuse of discretion by the government in its award of a contract, the government had a statutory right to reject any and all bids, and the rejection does not show a violation of the competitive bidding statute. *Corbin v. Collin Cnty. Comm'rs Ct.*, 651 S.W.2d 55, 57 (Tex. App.—Dallas 1983, no writ). We agreed that it was necessary on the part of the rejected lower bidders to allege that the discretion exercised by the government was illegally done or fraudulently exercised. *See id.* (quoting *Holt & Co. v. Wheeler Co.*, 235 S.W. 226, 229 (Tex. App.—Amarillo 1921, writ dism'd)).

Thus, before immunity will be waived for alleged violations of the lowest responsible bidder process, we have usually insisted on allegations and evidence[4] that the governing body's procurement power was used illegally or fraudulently. "It is only in cases of very extreme and arbitrary conduct on the part of the [government] that the courts are authorized to lay hands on" this facet of the procurement process and interfere with the sound exercise of governmental discretion. *See Sterrett*, 240 S.W.2d at 519. As we interpret lowest responsible bidder provisions, only evidence of a governing body's abuse of its discretion to reject bids will waive its immunity. If indicia of graft, cronyism, or other unlawful purpose are absent, and if the record otherwise supplies some rational basis for the decision, a court should not interfere

---

[4]At least when a plea to the jurisdiction involves a challenge to the existence of jurisdictional facts.

in the governing body's decision to reject a bid under Texas Local Government Code section 252.043(f).

## B. Other Courts and Commentators Have Reached Similar Conclusions

Our prior interpretation of a competitive bidding statute in *Corbin* is consistent with how other courts have approached similar statutes. *See, e.g.*, *Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J.*, 853 F.3d 671, 683 (3d Cir. 2017) (describing review of competitive bidding awards as "extremely limited in scope" and not actionable "unless the aggrieved bidder demonstrates that there was no rational basis for the . . . decision"), *as amended* (Apr. 26, 2017); *Advance Tank & Constr. Co., Inc. v. Arab Works*, 910 F.2d 761, 765 (11th Cir. 1990) ("[U]nless a plaintiff can demonstrate improper influence or a fraudulent scheme to eliminate fair competition, the honest exercise of discretion is presumed proper . . . ."); *Conway Corp. v. Constr. Eng'rs, Inc.*, 782 S.W.2d 36, 39 (Ark. 1989) (permitting challenge of a bid rejection in bad faith); *Budd v. Bd. of Comm'rs of St. Joseph Cnty.*, 22 N.E.2d 973, 975 (Ind. 1939) (stating that injunction may be available "where the award is arbitrary, corrupt, or fraudulent"); *Baukol Builders, Inc. v. Cnty. of Grand Forks*, 751 N.W.2d 191, 199 (N.D. 2008) (stating that such a claim turns on whether the governing body "acted arbitrarily, fraudulently, or collusively, or that its judgment was influenced by improper motives").

Commentators agree. "Reservation of the power to reject all bids injects another element of discretion into the contract award process." 3 LOCAL

GOVERNMENT LAW § 22:16 (footnote omitted). "The discretion to reject all bids when conferred explicitly by applicable law is regarded as virtually absolute and may be overturned only if done in bad faith." *Id.* "A municipality's determination that an entity is a non-responsible bidder for a public works contract can be disturbed only if no rational basis exists for its conclusion." 10 MCQUILLIN MUN. CORP. § 29:72 (3d ed.). "Thus, unless a plaintiff can demonstrate improper influence or a fraudulent scheme to eliminate fair competition, the honest exercise of discretion is presumed proper since competitive bid statutes are for the protection of the public, not the benefit of an unsuccessful bidder." *Id.* "In the absence of improper influence, the municipality need not be correct in its assessment of a bidder's 'responsibility'; it need only have bona fide, rational, and articulable reasons for its decision." *Id.*

## C. The City of Dallas Provided Evidence of Rational Reasons for Disqualifying Gadberry's Bid

The Texas Legislature has provided examples of rational bases for a government to judge a bidder's responsibility in competitive bidding statutes. In addition to price, the Legislature has also suggested criteria such as:

- the experience and reputation of the bidder and of the bidder's goods or services;
- the quality of the bidder's goods or services;
- the extent to which the goods or services meet the municipality's needs;
- the bidder's past relationship with the municipality;
- the impact on the ability of the municipality to comply with laws and rules relating to contracting with historically underutilized businesses and nonprofit organizations employing persons with disabilities;

–16–

- the bidder's safety record;
- the bidder's proposed personnel; and
- whether the bidder's financial capability is appropriate to the size and scope of the project.

*See, e.g.*, TEX. LOC. GOV'T CODE § 252.043(b); TEX. GOV'T CODE § 2269.055(a).

In this case, the City's right to consider similar criteria was reinforced by the bid documents themselves. Those documents achieved three ends: they cautioned contractors that they could be rejected for lack of relevant experience, they defined that experience in terms of equivalent projects within the past three years, and they specifically reserved the right to request information on this issue.

Gadberry's bid was the lowest, but that achieves little for Gadberry because it has not alleged or offered any proof[5] that the City's decision to deem Gadberry not responsible was rooted in fraud, corruption, or any other sort of gross abuse of the City's procurement power. Indeed, Gadberry conceded at the temporary injunction hearing that the City's reason for disqualifying Gadberry was "not improper motives for financial reasons or anything like that. That's what people often think of when

---

[5]In its reply brief, the City argues for the first time, in just two sentences and without any citation to authority, that "[t]he evidence referenced in Gadberry's brief in the temporary injunction appeal was not presented to the trial court for its consideration when it ruled on the City's plea to the jurisdiction. Accordingly, the City contends it cannot be considered in this Court's de novo review of that ruling." This argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *Amrhein v. Bollinger*, 593 S.W.3d 398, 403 (Tex. App.—Dallas 2019, no pet.). It is also waived, having been raised for the first time in a reply brief. *See Humphries v. Advanced Print Media*, 339 S.W.3d 206, 208 (Tex. App.—Dallas 2011, no pet.) ("In general, an issue raised for the first time in a reply brief may not be considered."). We therefore do not consider it except to make note of the supreme court's direction that our review of a plea to the jurisdiction should be "confine[d] . . . to the evidence relevant to the jurisdictional issue." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

procurement goes wrong, that somebody's brother-in-law might be benefiting."[6] Therefore, all that remains is to determine whether the record supplies some rational basis for the City's award.

During its review of the bids, the City consistently cited Gadberry's lack of experience as its reason for disqualifying Gadberry as a responsible bidder. Comparable experience is certainly a relevant factor, and the record bears out the City's belief that Gadberry lacked it. The City's project to develop roads and trails in and near downtown Dallas was worth roughly $11.5 million dollars; the largest projects appearing on Gadberry's resume were worth at most $9.5 million, and these projects were not roadway projects but renovations and repairs of existing buildings. The City, in its discretion, determined that only experience within the last three years would be relevant; Gadberry's only experience with loosely comparable trail projects occurred four and five years beforehand, and they were worth just over $3 million. In apparent good faith, the City stated its concern that the project would require significant experience managing traffic flow during construction in downtown Dallas's dense urban environment; Gadberry had no such experience, having completed projects only in "tightly controlled conditions," in the words of an affiant for the City. As for how Gadberry's track record related to the project's time

---

[6]Gadberry's only proof that might even arguably fit with the standard we have articulated was its evidence that SWA's recommendation to the City to disqualify Gadberry was based on SWA's years-old grudge relating to another project. However, Gadberry offered no evidence that the City shared in this alleged grudge or otherwise acted with improper motives.

demands, the matter was put succinctly by counsel for one of the City's partners on the project, who noted, "Gadberry's largest contract completed was a $9MM project that was completed over a 36 month period. Gadberry is now being asked to complete[] a $12MM project over a 14 month period." Counsel questioned whether Gadberry had demonstrated an ability "to handle a project that is 30% more expensive in shorter than half the time as their previous largest contract."[7] By contrast, the next lowest bidder, Fain, had experience with several large, recent roadway construction projects, the highest of which was valued at approximately $13 million. These considerations are all part of the "experience, qualifications, or financial capability" criteria set out in the bid documents that the City could use to exercise its discretion in determining whether Gadberry was a responsible bidder.

Gadberry has not provided evidence creating a fact issue as to whether the City unlawfully abused its discretion under Texas Local Government Code section 252.043(f) and waived its immunity. *See Garcia*, 372 S.W.3d at 635 ("[I]f the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law."). As in *Corbin*, the record here reflects that the City considered "apparently honest evaluations," the City did not violate the competitive bidding statute, and the rejected bidder is not entitled to injunctive relief. *See* 651

---

[7]Furthermore, when Gadberry initially protested unfair treatment, the City afforded it another opportunity to submit its qualifications for review and gave full consideration to Gadberry's revised submission—facts that lend additional support to the view that Gadberry received even-handed treatment rather than an arbitrary deprivation.

S.W.2d at 57.  The trial court was therefore required to grant the City's plea to the jurisdiction as to the chapter 252 claim.  We sustain the City's first three issues.

## IV.  CONCLUSION

We conclude that the trial court erred when it denied the plea to the jurisdiction as to Gadberry's claim under chapter 252.  We reverse the trial court and dismiss the case for want of jurisdiction.  *See Maspero*, 640 S.W.3d at 533.


220665f.p05

/Emily Miskel/
EMILY MISKEL
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, MAYOR ERIC JOHNSON IN HIS OFFICIAL CAPACITY, AND CITY COUNCIL MEMBERS CHAD WEST, CASEY THOMAS, CAROLYN ARNOLD, ADAM BAZALDUA, TENNELL ATKINS, PAULA BLACKMON, ADAM MCGOUGH, JAYNIE SCHULTZ, CARA MENDELSOHN, AND GAY WILLIS IN THEIR OFFICIAL CAPACITIES, Appellants

No. 05-22-00665-CV        V.

GADBERRY CONSTRUCTION COMPANY, INC., Appellee

On Appeal from the 192nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-22-04882. Opinion delivered by Justice Miskel. Justices Molberg and Pedersen, III participating.

In accordance with this Court's opinion of this date, the order of the trial court is **REVERSED** and the case is **DISMISSED**.

It is **ORDERED** that appellants CITY OF DALLAS, MAYOR ERIC JOHNSON IN HIS OFFICIAL CAPACITY, AND CITY COUNCIL MEMBERS CHAD WEST, CASEY THOMAS, CAROLYN ARNOLD, ET AL. recover their costs of this appeal from appellee GADBERRY CONSTRUCTION COMPANY, INC.

Judgment entered this 11th day of July 2023.